## MYERS *vs.* GILBERT.

18   467
132   539

1. A count, which, after setting forth a contract for the hire of a slave, to be employed only in a particular service, discloses a breach of duty in that behalf on the part of the hirer, in putting the slave to a different service, and a consequent loss to the owner, is good as a count in case.

2. Where one partner, in a matter connected with the business of the partnership, does an act to the injury of a third person, which is a tort by construction or inference of law merely, his co-partner is equally liable with him for the consequences of the act, and being so liable, is an incompetent witness for him, when sued alone by such third person to recover damages for the tort.

3. In an action to recover the value of a slave, hired as a servant on a certain steamboat, and alleged to have been lost by reason of a breach of the contract on the part of the hirer, the fact that the boat, before and at the time of the hiring, was running as a regular packet on the line between Mobile and New Orleans and was advertised in the newspapers as such, in the absence of proof of an express contract, is not conclusive evidence of a contract that the boat should run on that line, and not elsewhere, during the term of hiring, but is a circumstance merely, to be considered by the jury, in connection with the other testimony, for the purpose of ascertaining what the real contract was.

ERROR to the Circuit Court of Mobile.    Tried before the Hon. John Bragg.

THIS was an action instituted by the plaintiff against the defendant in error to recover damages for the loss of a negro alleged to have been hired to him.    The questions arising upon the pleadings will be understood by reference to the opinion of the court.    By the bill of exceptions it appears that the defendant offered as a witness his brother Samuel C. Gilbert and that the plaintiff objected to him on the ground of interest.    The witness, being sworn on his *voir dire*, stated that he was a partner with the defendant in running the steamboat Montezuma, and a joint owner with him thereof, at the time the negro was lost from said boat, that he did not know whether, as such partner, he was legally bound to pay the one half of any judgment that might be rendered against the defendant, but considered himself in honor bound to do so, and would pay one half of any such

recovery. The court thereupon overruled the plaintiff's objection, and the witness was allowed to testify. The plaintiff proved that the slave was his property and was hired by him to the defendant as a deck hand on the Montezuma, a steamboat belonging to the defendant and the said Samuel C. Gilbert; that the said steamboat had before, and was, at the time of the hiring, advertised to run as a regular packet between Mobile and New Orleans; that the slave fell from said boat and was drowned in the Mobile river, near the junction of the Alabama and Tombeckbee rivers, whilst said boat was making a trip up the Tombeckbee river for the purpose of taking on board some negroes that were to be carried to New Orleans. The defendant introduced evidence to show that before and during the term of said hiring, the said boat, though generally run as a packet between Mobile and New Orleans, was also run to other points, when it was found necessary or convenient to do so, for the purpose of procuring freight. There was no evidence of any express agreement between the plaintiff and defendant as to where the steamboat was to run whilst the said slave was on board. The plaintiff asked the court to charge the jury that if the defendant had publicly advertised the steamboat Montezuma, in newspapers printed in Mobile and New Orleans, before and at the time of the hiring, to be run as a packet between Mobile and New Orleans, and that it was running as such between those points at the time the slave was hired, and nothing was said, by the plaintiff or defendant at that time, as to where the boat should run, it would be implied that the steamboat was to run between Mobile and New Orleans, and that this would be conclusive evidence, as against the defendant, that the contract was that the slave was to be employed on said steamboat when it was running between Mobile and New Orleans, and not when it was running elsewhere, unless it was shown that the plaintiff had notice that she was to run elsewhere. This charge the court refused to give as requested, but instructed the jury that the advertisement was a circumstance, which, along with the other evidence, they might consider in determining what the contract between the parties really was.

To the rulings of the court on the pleadings and evidence, and to its refusal to charge as asked, the plaintiff excepted, and now assigns them as error.

D. SMITH & F. S. BLOUNT, for the plaintiff in error, cited:

1. Upon the demurrer to the declaration.—Smith v. Rutherford, 2 S. & Rawle, 360; 1 Saunder's Pl. & Ev. 338; 1 Chitty's Pl. 199, 200; Bouv. Law Dic. Misfeasance; Angus v. Dickerson, Meig's Rep. 459; Story on Contracts, p. 183, § 231.

2. Upon the admissibility of Samuel C. Gilbert as a witness. —Curtis v. Monteith, 1 Hill's N. Y. Rep. 356; Bell v. Porter et al., 9 Conn. Rep. 29; Collyer on Partnership, 687; Story on Partnership, 257, § 166.

3. As to the charge of the court.—Ivey v. Phifer, 11 Ala. 535; Clealand v. Walker, ib. 1058; Hinton v. Nelms, 13 ib. 222; Cole v. Spann, ib. 537.

4. The parties contracted with reference to the usage or trade in which the boat was engaged.—Story on Contracts, p. 7, § 14, Seawell v. Gibbs, et al., 1 Hall's N. Y. Rep. 602-17.

5. Liability of defendant for loss of slave.—Spencer v. Pilcher, 8 Leigh, 565; Angus v. Dickerson, Meig's Rep. 459; Strawbridge v. Turner, 9 Louisiana, 213; De Tollenen v. Fuller, S. C. Con. Rep. 55.

6. Using it in a different manner, or for a different purpose.— 1 U. S. Dig. 373; Story on Contracts, 639.

WM. G. JONES, for the defendant:

1. This is not an action of assumpsit, but an action on the case. Each count in the declaration is framed in case, and the last count is in trover. Counts in case may be joined with a count in trover, and, therefore, it would have been erroneous to demur to the whole declaration on the ground of a supposed misjoinder.

2. But the first and second counts, though framed in case, set out in reality a contract, on which assumpsit would lie. Where the cause of action as set out, is really a breach of contract for which assumpsit would lie, but the count is framed in case, the count is bad on general demurrer.—Orton v. Butler, 2 Chitty's Rep. 343; (18 Eng. Com. Law Rep. 361;) S. C., reported in 5 Barn. & Ald. 652; (7 Eng. Com. Law Rep. 224;) and where a count so framed is joined with a count in trover, the proper course is to demur to each count separately, and not to the whole declaration.—1 Chitty's Pl. 199.

Myers v. Gilbert.

3. The testimony of the witness S. Gilbert, was clearly admissible. The suit was not against him but his brother, and was founded on an alleged tort of the defendant, to wit, on an alleged trover and conversion of a negro. The witness, it is true, was a partner with the defendant in the business of steamboating, but it was not shown and is not to be presumed that the finding and wrongful conversion of other men's slaves, was a part of their co-partnership business. That he considered himself bound in honor to share the loss with the defendant, in case of judgment against him in this case, clearly did not render him incompetent to testify. This has been often decided, and is well settled both in England and America.—1 Phil. on Ev., 54; Cowen & Hill's Notes to 1 Phil. on Ev., n. 92, p. 99; McCausland v. Neal, 3 Stew. & Port. 131; 1 Greenl. Ev. 432-3, §§ 287-8.

4. As to the effect of the newspaper advertisement, it was certainly not conclusive evidence. The court allowed it to go to the jury, without its being shown that the plaintiff ever saw it, or acted on it, and this was certainly as much as the plaintiff had a right to ask.

CHILTON, J.—This was a special action on the case, brought by the plaintiff against the defendant in error, to recover the value of a negro slave, alleged to have been hired to the defendant and lost by his negligence.

The declaration contained three counts, to two of which a demurrer was interposed, which demurrer was sustained.

The first count charges the hiring of the negro slave for the term of three months, at twenty dollars per month, "to be kept and employed by the defendant as a servant on a certain steamboat owned by him, called the Montezuma, then running and to be run, during the term of said hiring, on the line between the cities of Mobile and New Orleans, as a common carrier in said trade and business on said line; and, therefore, it then became the duty of said defendant to employ said boy only, in accordance with said agreement, as a servant on said boat, and to deliver him to said plaintiff at the expiration of such hiring. But the defendant, disregarding his duty in the premises, during the time of such employment and hiring, by his order and command, as the owner of said boat, caused her to quit the said line between Mobile and New Orleans, and, without the knowledge

or consent of the said plaintiff, carried away said boy on board of said boat, and while navigating the waters of the Tombeckbee river, a great distance from said line, viz., one hundred miles, said boy was thrown from said boat and drowned, and thereby entirely lost to the said plaintiff—to his damage," &c. The second count, after setting forth the contract of hire, avers that it became the duty of the defendant to employ the boy in a proper and humane manner and to deliver him to the plaintiff at the expiration of the term of service, &c., but disregarding his duty in that behalf, the defendant failed and refused to deliver said boy after the term of service expired, and wrongfully took such little care of him and employed said boy in so improper and unreasonable a manner, and conducted himself so carelessly, improperly, and negligently in that behalf, that the boy was wholly lost to the plaintiff, &c.

1. It is objected by the defendant in error that although these counts are in form counts in case, they nevertheless are really in assumpsit, relying upon a breach of the contract for the right to recover.

As to the second count, we cannot entertain a doubt as to its sufficiency as a count in case. Respecting the first, we confess we are not so well satisfied. It seems to be well settled that a count may be framed in case, the gravamen of which shall consist of a breach of duty arising out of an employment for hire. The pleader in such case relies upon such breach of duty as tortious negligence, instead of considering the same circumstances as forming a breach of promise, implied from the consideration of hiring.—1 Saund. Pl. & Ev. 338; 5 B. & C., 602; 3 East. 70. Such actions are considered *ex quasi contractu*, and are not confined to cases where the law raises an obligation to do a particular act, but in cases of express contracts, which create a duty, a party is not, it is said, bound to declare upon the breach of the contract, but may declare for the tort, and aver that the defendant has neglected to perform his duty.—1 Saund. Pl. & Ev. 338, and cases cited; 1 Chitty's Pl. 135-6, and cases cited by him. Mr. Chitty, quoting the language of Littledale, J., in 5 B. & C., 609, thus states the rule of law—"that where from a given state of facts the law raises a legal obligation to do a particular act, and there is a breach of that obligation and a consequential damage, there, although assumpsit may be maintained

Myers v. Gilbert.

on the promise implied by law to do the act, still an action on the case founded in tort is the more appropriate remedy, in which the plaintiff in his declaration states the facts out of which the legal obligation arises, the obligation itself, and the damage resulting from that breach.—P. 135. Trespass on the case *ex delicto* and *ex contractu* are frequently concurrent remedies. It is held that either will lie for a breach of duty by an attorney.— 11 Johns. 479 ; 6 Greenl. 470 ; also, for false warranty in the sale of chattels and a breach of duty by a common carrier.—1 U. S. Dig. 62, §92; where the cases are cited.—Without, however, citing further authority, we think those refered to are sufficient to show that both the counts demurred to, and which were held bad by the Circuit Court, are substantially good, and that the court erred in sustaining the demurrer to them.

2. The second point respects the admissibility of Samuel C. Gilbert as a witness for the defendant. This witness testified that he was interested in the result of this suit, in this, that he was a partner with the defendant in running the steamboat Montezuma, and a part owner thereof, at the time the slave sued for in this action was lost from said boat. The witness upon his *voir dire* further stated he did not know whether upon the articles of agreement he was legally bound to pay any part of the judgment which might be recovered in this case, but he considered himself, as a partner, in *honor* bound to pay half of what might be recovered against the defendant, and should pay half of any judgment that might be so rendered. The Circuit Court was of opinion, and so held, that the witness was competent. The question as to this witness' competency turns upon the fact, whether this presents a case in which, should a judgment be rendered against the defendant below, he could have called on the witness for contribution. If he could, then it must be obvious, he was an incompetent witness.

As a general rule, it is conceded that the doctrine of contribution does not apply to *tort feasors;* and it may be also laid down as a general rule that although partners are bound by the contracts, they are not answerable for the wrongs of each other. —Coll. on Partnership, §. 457; 1 Wat. on Partnership, 235 ; but this rule admits of exceptions. The case before us, we think, furnishes an illustration of one of them. The servant, whose value is sought to be recovered, was employed upon the

boat, jointly owned by the defendant and the witness. They were partners in the business of common carriers, and were by law jointly liable for the proper treatment and return of the slaves employed by either in conducting the joint business. If, in the conduct of such business, a liability is incurred by the negligence of the servants of the firm, or of either of its members, in a matter not wholly disconnected with the partnership, trade or business, although in many cases the remedy may be pursued against the member who is guilty of the tort, yet a joint liability attaches as against them all, and a joint action may be maintained against them.

So where an action was brought against three defendants, proprietors of a stage coach, the declaration charging them with so carelessly managing their coach and horses, that the coach ran against the plaintiff and broke his leg, it was held, that although the accident happened by the negligent driving of one of the proprietors, case was maintainable against them all; though the plaintiff might have brought his separate action against the one who drove.—Moreton v. Hardern, 4 Barn. & Cres. 223. "Partners may also be sued in an action of trover, although there was no joint conversion in point of fact. A joint conversion may be raised in point of law by the assent of the partner to the acts of his co-partner."—See Coll. on Partnership, § 458, p. 415, and authorities cited in note 1, (ed. of 1848.)

Judge Story fully sustains this doctrine in his work on Partnership, page 257, and he says the right to contribution equally applies to monies paid, and debts incurred, and contributions made by one partner on account of negligencies and torts affecting the partnership.—Citing Pearson v. Skelton, 1 M. & Welsb. 504; Story on Partnership, 322, § 220. But in cases of known meditated wrong by one partner, he is not entitled to call on his co-partners for contribution. It is only where the party is acting under the supposition of the innocence and propriety of the act, and the tort is one by the construction or inference of law. —ib.

We have shown that in this case, if there was a contract of hiring, by which the slave in controversy was to work on the boat of the defendants, while she was plying as a packet between the cities of Mobile and New Orleans, and the defendant in violation of such contract abandoned this line, and was engaged in the

32

navigation of other waters, in consequence of which, or while engaged in this last named navigation, the boy was drowned, the injured party has his election either to sue in case or assumpsit. If he had sued in assumpsit, the doctrine of contribution would apply, and it no less applies because the plaintiff has elected to go upon the breach of duty created by the contract. We are quite clear in the opinion that the witness would be liable to contribute to the payment of any judgment which may be recovered, and being so liable, that he is incompetent to testify and should have been excluded.

3. As to the charge of the court, we think it strictly conforms to the law. In the absence of all proof of an express contract as to what line the boy should be employed upon, the fact that at the time of the hiring the boat on which he was to labor was engaged as a regular packet between Mobile and New Orleans, and was advertised in the newspapers to run as such, although a circumstance to show what the contract or understanding between the parties was, is not conclusive evidence against the defendant that the contract was as the plaintiff below desired the court to charge The jury should consider such evidence, in connection with the other facts in proof, the general custom of the boat in making departures to other points for the purpose of getting a cargo and freight, if such custom was shown to have existed before and at the time of hiring—these facts, we say, should have been left, as they were submitted, to the consideration of the jury, that they might determine from them what the contract really was.

The effect of the charge would have been, had the court given it, to put the court in the place of the jury, to determine upon the main fact in the cause from the evidence adduced, the decision of which peculiarly belonged to them, and not to the court.

For the errors, however, which we have noticed, the judgment must be reversed and the cause remanded.