# Capital City Water Co. *v.* City Council of Montgomery.

*Action by Water Works Company against Municipal Corporation.*

| 92 | 366 |
| 98 | 156 |
| 92 | 366 |
| 99 | 339 |
| 92 | 366 |
| 132 | 539 |

1. *Complaint in case and assumpsit.*—Case and assumpsit can not be united in one complaint, either in the same count, or in separate counts; and when the complaint contains but a single count, the averments of which are partly in each form, and so framed that the

[Capital City Water Co. v. City Council of Montgomery.]

court can not say with certainty which form of action was intended, a demurrer to it is properly sustained.

2. *Contract of city with water company construed, as to number of hydrants to be used and paid for.*—Under the contract for the construction of a system of water works in the city of Montgomery, between the city and A. H. Howland and his associates, whose rights and duties have now devolved on the Capital City Water Company, it was provided (1) "that the whole of said pipe system shall be such as to cover and supply all portions of the existing streets of the city, and place not less than two hundred hydrants thereon to be so located that said hydrants shall average 528 feet apart;" (2) that the city "shall pay the sum of $11,000 *per annum*, in monthly installments, for the use of all the hydrants located in the original pipe system herein provided for;" (3) "that the works herein provided for shall be extended within a reasonable time after notice in writing by the city to said Howland and his associates that the city has located one hydrant on each tenth of a mile of said proposed extension, to be paid for at the annual rate of $55 per hydrant," and to be located by the city. *Held*, that although the plan first proposed by the company to the city required only twenty miles of pipe to supply the two hundred hydrants as located, and the city required a route twenty-seven miles in length, but without changing the location of any of the hydrants, it was under no obligation to establish and locate an additional number of hydrants on account of the increase in the length of the route, and was not liable in any form of action for the failure to do so.

3. *City of Montgomery; power to contract for water works.*—The sixth section of the charter of the city of Montgomery confers the express power to "establish or purchase and maintain water works, or contract for the furnishing of water for fully supplying the city and its inhabitants with wholesome water, and to regulate the manner and rate of furnishing water to private consumers;" and this grant of power must prevail against the provision contained in the ninth section, that the council "shall not contract any debt," nor incur any liability in the name of the city, "except such as shall be paid out of the ordinary current revenue collected in the year the debt or liability is contracted."

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN P. HUBBARD.

J. M. FALKNER, and ROQUEMORE, WHITE & McKENZIE, for appellant.

WM. S. THORINGTON, and TOMPKINS & TROY, *contra.*

McCLELLAN, J.—The appellant Water Company is the plaintiff in this action, in which it is sought to recover damages to the amount of six thousand five hundred dollars from the City of Montgomery. Many demurrers were interposed to the complaint, and among the grounds assigned are that both assumpsit and case are joined in its one count, and that the complaint is vague, uncertain and indefinite in that it does not appear from its averments whether the cause af action declared on is in assumpsit or case. These grounds of de-

[Capital City Water Co. v. City Council of Montgomery.]

murrer were sustained along with all others. We refer to them here because of the difficulty we experienced in a preliminary statement of the case resulting from the infirmity of the complaint which they pointed out. We were unable to say with assurance of certainty whether the reliance of plaintiff is on a breach of contract or upon a breach ot duty growing out of a contract. The complaint in its opening sentence claims "the sum of six thousand five hundred dollars for damages, which have accrued to the plaintiff up to this time, for the breach of a contract" existing between the Water Company and the city, whereby the city undertook to pay a certain rental for hydrants, &c., &c.; but in other averments of the complaint, plaintiff's claim is for damages resulting to it from a breach of duty on the part of the defendant in that by reason of certain stipulations of a contract and certain things done thereunder by the Water Company, it became and was the duty of the city, though no contract to that end is alleged, to locate and have put in place sixty-eight hydrants, on an extension of the original pipe system of the plaintiff, for which when so located the city was to pay the rental equivalent of the damages claimed, and that the defendant failed to so locate, and have put in place such hydrants, and in consequence of this omission of the duty growing out of contract no rent accrued or has been received by the plaintiff, and it has been damaged to the amount of the rent it would have been entitled to, had the city's duty in this behalf been performed. It thus appears that the complaint, containing as it does but one count, claims both in assumpsit and in case, or that it is entirely uncertain which of these forms of action is intended to be resorted to; and the demurrers addressed to this fault were, in our opinion, properly sustained.—*Munter v. Rogers*, 50 Ala. 283; *Myers v. Gilbert*, 18 Ala. 467; *Whilden v. M. & P. Nat. Bank*, 64 Ala. 1; *Chambers v. Seay*, 87 Ala. 558; *Sharp v. Nat. Bank, Ib.* 644.

The questions of final importance in this case, however, are raised by other grounds of the demurrer, and in reviewing the court's action upon them, it becomes necessary to pretermit the infirmity of the complaint pointed out above, and to consider whether on the facts averred a recovery could be had, either in assumpsit or in an action on the case.

The contract between the parties, for a breach of which, or for a breach of duty springing out of which, the suit was instituted, is, for the most part, in the form of an ordinance adopted by the City Council of Montgomery and assented to by the assignor of plaintiff, and in other part alleged to be a subsequent agreement in writing between the parties in modi-

fication, or, perhaps more aptly speaking, by way of construction, of the ordinance, in respect of its bearing on a certain alleged extension of plaintiff's pipe system beyond that required by or in contemplation of the original contract. The ordinance is set out *in extenso* in the complaint. It grants to one Howland, the assignor of the plaintiffs, and his assignees the right to construct, maintain and operate a system of water works in the city of Montgomery, for the purpose of supplying the city and its inhabitants with water for public, manufacturing and domestic uses; and contains regulations as to the character of the works, the size and general location of the pipes, the kind and quantity of water to be furnished, the rates to be charged therefor, except as to certain quantities, for stated purposes or otherwise, to be supplied to the city gratis, the amounts to be paid by the city for water in excess of such stipulated quantities, or for other purposes, &c.. &c. The sections of the ordinance which bear directly upon the rights and liabilities of the parties involved in this case are the 6th, 14th, 19th, and 20th, and these are as follows:

"*Section 6.* Be it further ordained, That leading from this pumping station to Court Square there must be a twenty-four inch pipe, and leading from this pipe there must be other pipes of sufficient size to fully reach and supply all parts of the city; but the size of the branch mains leading from said twenty-four inch main on Court street to the other parts of the city is to be hereafter determined upon by and between the said City Council and said Arthur H. Howland, his associates, successors, or assignees, before the work contemplated by this section is commenced, provided the said City Council is represented in making said selection by a competent hydraulic engineer. The whole of said pipe system shall be such as to cover and supply all portions of the existing streets of the city, and be furnished with all the necessary and usual stop-gates, special castings, air-valves, blow-offs, etc., and place not less than two hundred hydrants thereon of approved construction, to be so located that said hydrants shall average 528 feet apart, and be so located by said city with two nozzles of such size as the city may direct; and any hydrants which the city may desire to place on this original pipe system as herein provided for shall be furnished, maintained and set, whenever said city may so direct, the expense thereof to be paid by the said city, and the city to have the use thereof free of rental. All pipes, castings, etc., to be of first class iron, bitumenized and tested with a hydrostatic pressure of 400 pounds to the square inch."

"*Section 14.* Be it further ordained, That in consideration

23

[Capital City Water Co. v. City Council of Montgomery.]

of these premises the said City Council hereby agrees to pay to said Arthur H. Howland, his associates, successors or assigns, for the use of the hydrants of said water works for fire protection, the sum of *eleven thousand* dollars per annum for all the hydrants located in the *original pipe system* herein provided for, to be paid in equal monthly installments during the existence of this contract, the use of all other hydrants hereinbefore provided for to be free to said city."

"*Section 19.* Be it further ordained, That the works herein provided for shall be extended within a reasonable time after the said city shall notify in writing the said Arthur H. Howland, his associates, successors or assigns, that the said city has located *one hydrant* on *each tenth of a mile* of said proposed extension, to be paid for at the annual rate of *fifty-five dollars* per hydrant. Any additional hydrants which the city may desire on such proposed extension, shall be located by the city and furnished, set and maintained at the expense of the city, as provided in section six of this article, and free of rent."

"*Section 20.* Be it further ordained, That when the water works herein provided for are completed as stipulated for by said contract, that *it shall be obligatory upon said city to use the hydrants* of said water works and pay for the same as herein provided for, *during a period of fifteen years;* but this shall *not affect any rights and privileges herein granted to maintain and operate* said water works in furnishing others than the city."

The contention set forth in the complaint is, that the original pipe system required by section 6 of the ordinance, necessary and sufficient to reach and supply all portions of the existing streets of the city and to the placing thereon of two hundred hydrants at an average distance apart of five hundred and twenty-eight feet, was twenty miles in length; and it is alleged that "Howland and associates, in December, 1885, presented a plan proposing for the adoption of the defendant a pipe system, in accordance with the provisions of section 6 of said contract, to cover and supply all portions of the existing streets of said city, . . . ., and so planned that not less than two hundred hydrants could be placed thereon at points already located and determined by the defendant," so that such hydrants would be 528 feet apart, that this plan involved the laying of only twenty miles of pipe which was the whole of said pipe system which plaintiff was bound to construct and maintain under said section 6. It is further made to appear by the averments of the complaint that the City Council did not accept and adopt this plan, but was desirous of having a longer line of pipes, and while it ordered or made no

[Capital City Water Co. v. City Council of Montgomery.]

change in the location of the hydrants themselves, which twenty miles of pipe was sufficient to reach and supply, did insist on a longer line of pipe to reach said hydrants; and induced plaintiff to construct a longer line of pipe by the distinct agreement and understanding in writing that only so much of the long pipe system as was necessary to reach and supply the hydrants, as located by the defendant, was to be considered as the original pipe system referred to in section 6 of said contract." On the faith of this agreement, it is claimed, the plaintiff constructed and has kept supplied with water, &c., twenty-seven miles of pipe, instead of the twenty miles required by section 6, and that it thereupon became defendant's duty within a reasonable time to locate one hydrant on each tenth mile of said additional seven miles of pipe making sixty-eight hydrants, and to pay plaintiff for each of said hydrants the sum of fifty-five ($55.) per annum; but that defendant has wholly failed and refused to locate and have erected said hydrants and to pay plaintiff therefor as provided in section 19 of the contract. "Wherefore [the complaint continues and concludes] plaintiff says that by reason of the premises it became and was the duty of the defendant, on the 1st day of August, 1886, to locate said sixty-eight hydrants on said extension and to pay monthly to plaintiff, under the provisions of the contract aforesaid, at the rate, for each of the sixty-eight hydrants, of fifty-five dollars per annum, up to and including the 1st day of December, 1887, which the defendant has wholly failed and refused to do, to the damage of plaintiff sixty-five hundred dollars, wherefor it sues," &c.

It is to be borne in mind in the consideration of this case, that the plaintiff was granted the right and assumed the obligation to supply water not only to the city, in its corporate capacity, but also to its inhabitants individually, and that the supply of water to the municipality was not only for the suppression of fires, but also for sprinkling the streets, flushing sewers, filling and running fountains, &c., &c., and further, that the supply of water to individual and private corporations was both for domestic and manufacturing uses. It is also to be kept in view that the compensation to the water company provided for in the ordinance was not alone that which the city should pay for the public uses to which the water received by it might be devoted, but also that which individuals and industrial corporations should pay for water devoted to private purposes. We can not concur with counsel that the city was to "pay for" the water works on a basis of pipe mileage. We do not understand that the works were to be paid for at all or have, to any extent, been paid for by the city or its inhabi-

tants.   The works still belong to the water company.   The
undertaking of the city was to pay for the *use* of the system
and the water supplied by it under certain circumstances and
conditions, and the inhabitants of the city were to pay for
water supplied to them.   The extent of the city's use was in
a manner to be measured on a basis of the pipe mileage *used
by* it, but not on the basis of total mileage, more or less of
which may not have contributed at all to public uses and pur-
poses.   It is also to be observed that while the water company
is *required* to construct a system of pipes sufficient only to reach
and supply all portions of existing streets and not less than two
hundred hydrants located 528 feet apart thereon, it has the
privilege and right to construct and maintain a greater length
of pipes than this either in the streets of the city, or in the sub-
urbs thereof, or within the police jurisdiction, or even entirely
beyond the city, its suburbs, and police boundaries.   With-
out any contractual stipulation, therefore, or any action to that
end on the part of the city, the water company was authorized
to extend its pipe system indefinitely and wholly without ref-
erence to the needs of the city with respect to water for its
fire engines, streets, sewers, public fountains, &c; and of course
without looking to the city for compensation by way of the
rental of hydrants or otherwise for constructing or maintaining
such extension, but relying on private consumption along its
line for a remunerative return for the outlay in construction
and expense of maintaining.   On the other hand, it appears to
have been in the minds of the parties that the city would at
some time have need of more hydrant, or hydrants in other
places than those, not less than 200 in number, to be located
as provided in section 6, or that, whether such additional hy-
drants were at any time needed or not, the increasing wants of
a growing and extending population might render it advisable
that the system should be extended, and to that end power
should be reserved to the City Council to compel such extension,
which the water company could make of its own motion, but
might not.   It was, in our opinion, upon these considerations
that section 19 was made a part of the contract.   With-
out it, it was the right and privilege of the water company to
make any extension of the original system it deemed advisable,
but the city was under no obligation to locate hydrants on any
such additional lines of pipe.   With this section the city had
the power to *require* extensions, and upon extensions so re-
quired it became its duty to locate not less than ten hydrants
to the mile and to pay therefor fifty-five dollars each *per annum*.
But the manner of making the requisition is particularly pre-
scribed.   The provision is, that the works provided for "shall
be extended within a reasonable time after the said city shall

[Capital City Water Co. v. City Council of Montgomery.]

notify in writing the said Howland or his assigns that the said city has located one hydrant on each tenth of a mile of said proposed extension to be paid for at the annual rate of fifty-five dollars per hydrant." Without such notification. so far as the terms of the original contract are concerned, there is no obligation on the part of the company to make any extension, and no obligation on the part of the city to locate or pay for hydrants on any extension made by the company. For remuneration in respect of any extension made in the absence of such requisition, the company must look to the individual consumers of water. Confessedly in this case, no such notification was ever given to Howland or his assigns. Upon the terms of the original contract between the parties, therefore, there can be no doubt that the extension which was made of the lines of pipe by the plaintiff did not and could not impose any duty upon the city to locate and pay for hydrants along its course. If such liability as is claimed by the complaint exists at all, it must result from the agreement alleged to have been entered into when the plans for the original pipe system were submitted to the City Council, subsequent to the adoption of the ordinance. We have quoted most of the averments as to this agreement. It appears from those averments that the lengthening of the lines of pipe as proposed in the plans, which defendant then insisted on and induced plaintiff to consent to, was not with the view of locating additional hydrants on the elongation of the lines as originally planned. On the contrary, it is alleged that twenty miles of pipes were adequate to fill the terms of the ordinance, and that "plaintiff was not bound under the contract to construct or furnish more than said twenty miles of pipe to reach and supply said two hundred hydrants," but that defendant wanted a longer line of pipe, and without making any change in the location of the hydrants, it "*did insist on a longer line of pipe to reach said hydrants*," and induced the plaintiff to construct such longer line, the irresistible conclusion is, not for the purpose of supplying other hydrants, or of locating other hydrants thereon, but solely for the purpose of reaching and supplying the two hundred hydrants provided for by section 6 of the contract and already located. Not only so, but for aught that is averred in this complaint it may very well be that no part or point of the twenty-seven miles of pipe which were laid is distant more than 528 feet from some one of the two hundred hydrants provided for in section 6, so that there would be no occasion whatever to place additional hydrants thereon, the whole territory covered by the pipe system of twenty-seven miles being also covered by the two hundred hydrants.

Approaching the construction of the written agreement alleged to be in modification of the original contract with these considerations in mind and reading the complaint most strongly against the plaintiff, we can not find anything in its terms which would justify us in holding that the city, by insisting upon a longer line of pipes *to reach and supply* certain two hundred hydrants for the use of which it was to pay eleven thousand dollars *per annum*, obligated itself to locate and pay for certain other sixty-eight hydrants covering, it is fair to assume, the same territory, and, therefore, of neither benefit to the defendant nor detriment, so far as the use thereof is concerned, to the plaintiff. We do not think the stipulation, that "only so much of the long pipe system as was necessary to reach and supply the hydrants as located by the defendant, was to be considered as the original pipe system referred to in section 6 of said contract," can be taken to change the conditions upon which the city's liability for hydrants on extensions of the system was made to depend by section 19 of the ordinance. Of course such a construction should, if possible, be adopted as would give this stipulation some field of operation, and it may be difficult to find such field except in the interpretation insisted on by the appellant that the additional piping was to be considered an extension within the section last referred to. But to give it that meaning would be to do such violence to the purposes disclosed in or inferable from the complaint, as actuating the parties, as would justify, indeed impel, a denial of all operation to the alleged modification, so far as can be at present determined. But we need not go to this extent. We think effect may be given to the agreement other than that insisted on by appellant's counsel. Section 6, in providing for the original pipe system, required that it should be such as to reach and supply all existing streets, and such also as to accommodate *not less* than two hundred hydrants located at an average distance of 528 feet apart, or ten to the mile. If the original pipe line was greater than twenty miles, it would accommodate more than 200 hydrants, and if the twenty-seven miles was to be considered "the original pipe system" it was the right of the city to have, under the terms of section 6, *more than* 200 hydrants placed thereon, 528 feet apart, and to use the same for the same remuneration now paid for the two hundred, viz., eleven thousand dollars *per annum*. The effect of the modifying agreement, in our opinion, was to take from the city the right to require one hydrant to be located for every tenth of a mile for the twenty-seven miles of the system, and to limit its privilege in this respect to two hundred hydrants covering only twenty miles of the pipes, and such other

[Capital City Water Co. v. City Council of Montgomery.]

hydrants, *on lines with and between these*, as it might see proper to have put in. Thus construed, the modified agreement can have no bearing upon section 19 of the ordinance, or with respect to any "extension" contemplated and provided for therein, but leaves the provisions of that section to the same operation as they would have had in the absence of the subsequent written agreement, under which, as we have seen, no duty could be imposed on the city to locate or pay for the use of hydrants, other than those provided for in section 6 and other than the annual sum agreed to be paid in section 14, except upon a written notice of the location of hydrants on each tenth of a mile of any proposed and required extension. The complaint fails to aver facts which bring the alleged extension of seven miles within the terms of section 19, and also fails to aver facts which show a modification of that section, or of the contract as a whole, which would impose on the city the duty of locating hydrants otherwise than as provided for by it. Had the purpose of the parties been to make section 19 applicable to the alleged extension,·it was an easy matter to have expressed that purpose or to have employed language leading with some degree of certainty to that conclusion. The modified contract alleged does neither. We see no escape from the conclusion that the complaint, if in assumpsit, fails to allege a breach of contract, and, if in case, fails to allege a breach of duty, on the part of defendant for which the damages claimed are recoverable. The demurrers which are addressed to this defect were properly sustained.

Other demurrers, which were also sustained below, raise the point that the contract between the water company and the city is violative of section 9 of the municipal charter which is as follows: "The mayor and aldermen shall have the power and authority, for the ordinary expenses of said city, to assess, levy and collect a tax on real estate not exceeding one-half of one per cent. on the cash value thereof, and no more in any one year; and that the city council shall not contract any debt, or incur any liability in the future, for or on account of the city of Montgomery, except such as shall be paid out of the ordinary current revenue collected in the year the debt or liability is contracted," &c. No conclusion we may reach on this question will affect the fate of this appeal since the judgment of the circuit court must be affirmed on considerations already adverted to, and hence we will not enter upon any exhaustive discussion of it. It is proper, however, to be stated that, in our opinion, these grounds of demurrer were not well assigned. Even in cases where the point is unaffected by other provisions of the charter, there have been adjudications by most respecta-

ble courts to the effect that a liability to pay monthly or an-
nually for gas, water and the like as and when supplied to a
municipality is not within inhibitions like that quoted from
the charter of Montgomery.—*East St. Louis v. E. S. G. L. &
C. Co.*, 98 Ill. 415; s. c., 37 Am. Rep. 97; *Grant v. Daven-
port*, 36 Iowa, 396; *Dively v. Cedar Falls*, 27 Iowa, 233;
*Utica Water Co. v. Utica*, 31 Hun. 431; *Smith v. Dedham*,
144 Mass. 177; *Valparaiso v. Gardner*, 97 Ind. 1.   There is
much conflict of authority on the point, however, and since
the validity of the contract involved here may be rested on
another consideration, we need not and do not decide the naked
question we have stated.   The other consideration referred to
is, that section 6 of the charter of Montgomery expressly con-
fers authority upon the city "to establish, or purchase and
maintain water works, or contract for the furnishing of water
for fully supplying the city and its inhabitants with wholesome
water, and to regulate the manner and rate of furnishing water
to private consumers," &c.   To the exercise of this power it is
manifestly essential that the city should have authority with
respect to making a contract for water supply to incur just
such liabilities as it has assumed in the contract with the Cap-
ital City Water Co., and this authority must be taken as vested
in it as necessary to the powers which are expressly granted.
This section must be read *pari passu* with section 9, and each
given effect.   If it be conceded that both cover the same
ground, the former does so specifically as to liabilities in re-
spect of water supply, and must prevail over the latter, a gen-
eral provision relating to all municipal liabilities.

　　Affirmed.