Bruley vs. Garvin.

---

BRULEY, Plaintiff in error, vs. GARVIN, Defendant in error.

*December 16, 1899 — February 27, 1900.*

*Real property: Parol license to cut timber: Revocation: Statute of
    frauds: Land contract: Attorney and client: Privileged communi-
    cations.*

1. A highway having been laid out over L.'s lands, G., with whom the
    town authorities had contracted to clear the same, made an oral
    contract to purchase the timber standing thereon from L. and paid

part of the purchase price. Before G. cut the timber, L. executed a written contract agreeing to convey an undivided half to B., who thereupon took possession of the logs cut from the highway by G. In an action by G. for the conversion of the logs by B., *held,* that while the contract between G. and L. was void under the statute of frauds, it was effective as a parol license to cut the timber, and the title to the timber, cut in reliance upon such license, prior to its revocation, would vest in G.

2. The licensee's authority to go upon the land terminating with the expiration of the licensor's estate, the written contract for the sale of the undivided half of the land made by L. with B., prior to the cutting by G., operated as a revocation of G.'s license *pro tanto.*

3. The reservation in such contract of the title to the timber in L. until the purchase money was paid simply amounted to a mortgage security, and gave no right to L. to dispose of the timber to others or do anything with it save to resort to it to enforce payment of the purchase money.

4. In order to entitle a client to the statutory privilege under sec. 4076, Stats. 1898, as to communications with his attorney, it is not absolutely essential that a fee should be paid or that there should be an actual retainer.

Error to review a judgment of the circuit court for Clark county: James O'Neill, Circuit Judge. *Modified and affirmed.*

This is an action brought by *Garvin* against *Bruley* for the alleged conversion of a quantity of logs on or about the 15th day of January, 1897. The taking of the logs by *Bruley* was admitted, and the question at issue was simply as to the ownership of the logs.

*Garvin* claimed title to the logs upon evidence tending to show the following facts: That in the year 1896, and prior thereto, Jesse Lowe and Thomas Lowe owned two forties of land in Clark county, Wisconsin, adjoining each other; that in the month of March, 1896, a road was laid out by the town authorities upon the line between said forties, and that in June, 1896, *Garvin* made a verbal contract with the town to cut down the timber in said highway and clear the same; that after making said contract he made a

verbal contract with the two Lowes to purchase the timber then standing in said new highway, and paid a part of the purchase price thereof; that, at the time said last-named contract was made, he had entered upon said highway, and had underbrushed a part of it; that he continued to work thereon clearing said highway, and cut down the trees from which the timber in dispute here resulted on the 28th day of December, 1896; that he had no notice that *Bruley* claimed any rights in said timber until after the same had been converted into logs; and that *Bruley* took possession of the logs and converted them in January, 1897.

The evidence on the part of *Bruley* tended to show that he made a written contract with Jesse Lowe for the purchase of an undivided half of both forties December 8, 1896, and about the same time made a verbal contract with Thomas Lowe for the purchase of the other undivided half of said land, and paid the sum of $400 of the purchase money, and was given possession of the land; that the written contract provided for the payment of the balance of the purchase money within six months from December 8, 1896, and the delivery of the deed upon such payment, and, further, that the title of the timber on said lands should remain in Lowe until the purchase money was fully paid; that, in pursuance of said written and oral contracts, *Bruley* took possession of the land, and commenced logging the timber thereon, as early as the 15th day of December, 1896; that on the 29th of December, 1896, the two Lowes executed warranty deeds of said lands to *Bruley;* and that he (*Bruley*) had no information of the laying out of said highway, or that *Garvin* claimed any interest in the timber thereon, at the time he contracted for said lands, nor at the time when he went into possession thereof and began logging the same.

There was a special verdict found by the jury as follows: "(1) Were Thomas and Jesse Lowe in the year 1896, and prior to the time when they made a bargain and sale

thereof, the owners of the southwest quarter of the south-east quarter of section 17, and the northwest quarter of the northeast quarter of section 20, in township No. 25 north, of range No. 1 east, in Clark county, Wisconsin? *Answered by the court upon the undisputed evidence:* Yes. (2)' Did the plaintiff in the summer of 1896 make a parol contract with Thomas Lowe and Jesse Lowe to sell to the plaintiff the•timber on the right of way or highway on the lands described in the answer? *A.* Yes.  (3) Did the plaintiff, pursuant to said parol contract, thereafter cut the timber for which this action is brought? *A.* Yes.  (4) Did the plaintiff have notice that the land upon which said timber was cut, or the timber thereon, had been sold, or contracted to be sold, to the defendant, *Bruley*, prior to cutting the same? *A.* No.  (5) Was the plaintiff notified by either Thomas Lowe or Jesse Lowe not to cut said timber prior to cutting the same? *A.* No.  (6) Was the plaintiff notified by the defendant, *Bruley*, after he had made a contract for the purchase of said land or timber, not to cut said timber, prior to cutting the same? *A.* No.  (7) What was the value of such of the timber cut by the plaintiff as was taken by the defendant, at the time and place when it was so taken? *A.* $80.93½.  (8) How much is the interest, at six per cent., on the sum so found to be the value of said timber, from the date when taken to the time of this verdict? *A.* $7.20."

Upon this verdict judgment was rendered in favor of *Garvin* for $88.13 damages and $124.77 costs, and *Bruley* sued out a writ of error.

For the plaintiff in error there was a brief by *J. R. Sturdevant & Son* and *Chas. F. Grow,* and oral argument by *J. R. Sturdevant.*

For the defendant in error there was a brief by *L. M. Sturdevant* and *R. F. Kountz,* and oral argument by *Mr. Sturdevant.*

Winslow, J.   Examination of the evidence convinces us that the findings of the jury are sufficiently supported by the evidence, and the main question to be decided is whether these findings, in connection with the undisputed facts, justify the judgment rendered.  *Garvin* attempted to purchase the timber by parol, and paid part of the purchase money, and agreed to pay the balance at a future time.   While this contract was void under the statute of frauds because it was a contract for the sale of an interest in real estate, it was still effective as a parol license to cut timber, which was good until revoked; and the title to timber cut in reliance upon such license, prior to revocation thereof, would vest in *Garvin.*   *Marsh v. Bellew,* 45 Wis. 36; *Lillie v. Dunbar,* 62 Wis. 198.   So the question simply is whether the license was revoked before *Garvin* cut the timber and converted it into personal property.   There was no revocation by notice.   The license had been executed by cutting the timber before any notice of revocation was given.   But it is claimed that the written contract of sale of an undivided half of the land made by *Bruley* with Jesse Lowe December 8, and prior to the cutting of the timber, operated as a revocation of the license *pro tanto.*   It is difficult to see how this conclusion can be escaped.   A parol license to cut timber on the licensor's land is simply authority to do certain acts upon another's lands.   Being founded in personal confidence, it is not assignable, and it is gone if the licensor deed the land to another, or if either party die.   *Thoemke v. Fiedler,* 91 Wis. 386; *Northern P. R. Co. v. Paine,* 119 U. S. 561.   The authority is ended by the transfer of the title or by the fact of death, and no notice thereof is necessary.   The estate of the licensor is gone, and the licensee's authority to go upon the land necessarily expires with the expiration of the licensor's estate.   1 Sugden, Vendors (8th Am. ed.), 177, note 1; 2 Am. Lead. Cas. 550, note to *Prince v. Case.*   So, had Jesse Lowe deeded one half of the land to *Bruley* prior

to the cutting, instead of making a contract to convey the same, there is no doubt that the license would have been thereby revoked as to an undivided half of the timber. But the contract to convey vested in *Bruley* the beneficial title to the land and timber, as between him and his grantor, and divested the grantor of all right to dispose of the timber thereafter. In other words, the grantor's power over the timber was gone. So the same condition which terminates the license in case of transfer by deed is present in case of a valid contract of sale, and the effect upon the unexecuted license must be the same. It is true that in the present case the title to the timber was by the contract reserved in the grantor until the purchase money should be fully paid. But this reservation of title was simply to secure the payment of the purchase money. The contract provided in express terms that *Bruley* should enter on the land and cut and manufacture the timber, and, upon payment of the purchase price, should receive a warranty deed of the property. The reservation of title in the timber simply amounted to a mortgage security, and gave no right to Lowe to dispose of the timber to others, or do anything with it save to resort to it to enforce payment of the purchase money. We conclude that, so far as the undivided half of the timber formerly owned by Jesse Lowe is concerned, *Garvin's* license was terminated prior to the cutting thereof, and hence that *Bruley* became the owner of that half. As to the other half of the timber, there was no valid contract to convey the same made before the timber was cut; and, the jury having found that no notice of revocation of the license was given prior to the cutting, the license was fully executed prior to revocation, and *Bruley* acquired no title thereto.

One question arises upon the rulings on evidence. The plaintiff in error (defendant below) called as a witness Judge R. B. Salter, the county judge of Clark county and a member of the bar, and endeavored to prove a conversation had

by him with *Garvin* upon a railway train in December, 1896, with reference to his rights in the timber in question. This testimony was ruled out upon objection upon the ground that it was a privileged communication under sec. 4076, Stats. 1898. It appeared by answers to preliminary questions that Judge Salter understood that *Garvin* stated the facts to him because he knew he (Salter) was an attorney, and would give him an opinion; that a lawsuit was contemplated about the matter; that he gave his opinion to *Garvin* after hearing his statement; that he supposed *Garvin* was seeking his advice, but that he was not retained, and received no fee; and that *Garvin* was not his client.

While the question as to the admissibility of this evidence is not free from difficulty, we think the ruling of the court was correct. In order to entitle a client to the statutory privilege, it is not absolutely essential that a fee should be paid, or that there should be an actual retainer. The exclusion of the evidence is founded upon public policy, in the furtherance of justice, to the end that a man may have free and unrestrained communication with his legal adviser. There can be no reasonable doubt that Salter was, for the time being, *Garvin's* legal adviser. *Garvin* unquestionably sought him and stated his case to him in his professional capacity, in order to get legal advice thereon. The subject is quite fully treated in the case of *Bacon v. Frisbie*, 80 N. Y. 394, where a similar conclusion was reached under circumstances almost identical with those now before us. *Crisler v. Garland*, 11 Smedes & M. 136, 49 Am. Dec. 49; 3 Jones, Ev. § 767, and notes.

Some exceptions are taken to portions of the charge. We have examined them and find no prejudicial error. They are not deemed of sufficient importance to require treatment at length.

Upon the verdict and undisputed facts, *Garvin* should

*By the Court.*— As to the sum of $44.06, the judgment is affirmed, and the remainder of the judgment is reversed, and the cause is remanded with directions to allow the plaintiff in error to tax his costs in the trial court and enter judgment therefor against the defendant in error.    The plaintiff in error will be allowed to tax the clerk's fees in this court, and his necessary disbursements for printing, but no other costs in this court are to be taxed.

Mandate modified on motion, March 21, 1900, as follows:

*By the Court.*— Judgment modified by striking from the damage the sum of $44.06, and as so modified affirmed. Plaintiff in error will be allowed to tax the clerk's fees in this court and necessary disbursements for printing but no other costs.