[Atlanta & Birmingham Air Line Ry. v. Wood.]

# Atlanta & Birmingham Air Line Ry. *v.* Wood.

## *Action for Damages for Filling up Pond and for Polluting Water.*

(Decided May 11, 1909.  49 South. 426.)

1. *Appeal and Error; Harmless Error; Ruling on Demurrer.*— Where the affirmative charge is given at defendant's request as to a certain count in the complaint, rulings on demurrer to said count adverse to the defendant, are rendered harmless.

2. *Same; Examination of Witness.*—Where the answer to a question would be the mere statement of a fact known as well to the jury as to the witness, the fact that the question was objectionable was harmless.

3. *Pleading; Demurrer; Part of Count.*—A demurrer should go to the whole count, unless in suits on bonds, alleging separate and special breaches, and hence, demurrer is not the proper mode of raising an objection to only part of a count.

4. *Same; Construed Against Pleader.*—The language of a pleading is always construed most strongly against the pleader.

5. *Waters and Water Courses; Filling up Millstream; Complaint.* —A complaint for injuries to a mill and pond by casting stones and dirt therein, which alleges, the ownership of the plaintiff of the mill and mill site, describing the land on which it is situated, and then further alleging that the mill and pond which supplies it with water have been situated at the point that they are now situated, have been situated there for many years, and that plaintiff at the time of the injury had the right to maintain said pond in the condition it was then in, must be held to mean that only the mill and the mill site were situated on plaintiff's land, and that the place where the embankment was constructed by the railroad and where the stones and dirt were put in to the pond, was on defendant's land or the lands of some one other than plaintiff, since the rule is that pleadings must be construed most strongly against the pleader.

5. *Same; Pollution of Stream.*—An action lies for casting dirt and foul water and substances upon one's land which reached the stream thereon by percolation, such as letting off water made noxious by the precipitation of mineral substances or rendering the water unfit for domestic, culinary or mining purposes, or unfit for cattle to drink, or fish to live in, or for manufacturing purposes.

7. *Same; Ponds; Filling With Dirt; Complaint.*—A complaint which alleges that defendant put into a stream within 450 feet of plaintiff's property, such quantities of loose earth, stone, etc., as by natural drifting or washing would fill up plaintiff's pond, millrace, and waterhouse to such an extent as to make it frequently impossible

[Atlanta & Birmingham Air Line Ry. v. Wood.]

for plaintiff to operate his mill at all, states a cause of action for damages.

8. *Same; Pollution of Stream; Evidence.*—A question to a witness as to whether or not it is not true that the more the lands are cleared in and around creeks and mills, the more valuable the mill site becomes is proper since the answer may tend to show the value of the property and the extent of the damages done; the witness having already stated that the more lands are cleared about the banks of the creek, the muddier it becomes.

9. *Same; Obstruction of Pond; Evidence.*—Where the action is for injury to a mill and pond by the deposit of sand and loose dirt in the pond caused by a fill made in constructing a railroad embankment, it was competent for plaintiff to show the general nature and character of the mill, and its surroundings, and all facts tending to show its advantageous location, and the proximity of the railroad, since all such facts have a bearing on its value.

10. *Same; Punitive Damages; Evidence.*—It is competent to show that the engineers in charge of the construction of the railroad embankment came over certain parts of the construction work, where such facts would tend to show their knowledge of the location of the mill, and that the work they were doing would probably injure the mill, as tending to show a right to punitive damages.

11. *Same; Obstruction of Pond.*—The action being for injury to a mill by the filling up of a millpond in the construction of a railroad embankment, it is competent to show the depth of the mud above as well as below the fill, since the difference between them might tend to show that the increased depth below the fill of the mud was occasioned by dirt from the fill.

12. *Same.*—It was competent to show the condition of the mill and pond alleged to have been damaged by the deposit of loose dirt and sand in the pond when plaintiff bought it, and the amount of the improvements made by him thereon as such evidence tended to show its condition and value.

13. *Same; Measure of Damages.*—In an action to recover for the filling of a pond and the damage to the property on account of the deposits of the mud and sand, the measure of damages is not only the difference in the market value before and after the injury, but the jury may also consider the amount of its custom and loss thereof, expense of remedying the injury and the increased cost of machinery to operate and of expense of operating caused by the wrongful act.

14. *Same; Riparian Owners; Easements.*—The right of a riparian owner to have the water from above flow naturally upon and through his land, is a natural easement, and inheres in the estate entitled to the benefit of such right ex jure naturae independently of grant or prescription.

15. *Same; Flowage; Easement.*—The right to overflow or back up water on the lands of another is an easement that lies in grant and can be acquired only by grant, express or implied, or by prescription which presupposes a grant.

15. *Same; Prescription; Right to Damages.*—Where one has for twenty years exercised the right to flood the lands of another with the waters of his millpond he acquires an easement therein and may recover damages, for the filling of a pond to the injury of his mill.

[Atlanta & Birmingham Air Line Ry. v. Wood.]

17. *Same; Effect on Prescription of Grant of Right of Way.*—A mill owner having a prescriptive right to a pond with which to run a mill does not revoke such right in the pond by granting a right of way over his land, and the railroad cannot make a fill in the pond so as to injure the mill, but must bridge, if necessary, to avoid injury.

18. *Same; Damages.*—A mill owner having prescriptive rights to overflow lands of another for the purpose of maintaining a pond with which to operate his mill may recover damages for decrease of his storage or reservoir facilities, caused by a filling up of the pond with dirt and other substances.

19. *Same; Evidence.*—Where there was dirt in the pond not placed there by defendant, it is improper to permit evidence of what it would cost to remove the dirt.

20. *Evidence; Written Contract; Collateral Issue.*—A contractor constructing a railroad, may not, in an action against the railroad, for injuries caused by the construction, testify to the contents of the contract under which he was working without producing the contract or explaining its absence, since the contract might tend to change the liability of the defendant, and was not, therefore, merely collateral to the issue.

21. *Same; Opinions.*—In the absence of evidence showing that such conditions existed, a witness should not be allowed to testify as to how much mill property would be depreciated by half filling up the pond with dirt or loose stone, or of entirely filling up the pond.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by C. J. Wood against the Atlanta & Birmingham Air Line Railway, for damages caused by filling up a pond in the construction of an embankment. Judgment for plaintiff and defendant appeals. Reversed and remanded.

W. C. TUNSTALL, JR., and KNOX, ACKER & BLACKMON, for appellant.—There is no merit in the motion made to strike the bill of exceptions for the reason that the order extending the time was made in term time by the court, and the court did not exhaust its power in making one extension.—Acts 1896-7, p. 321; Sec. 617, Code 1896; *Ladd v. The State,* 92 Ala. 52; *A. M. R. R. Co. v. Marcus,* 128 Ala. 355; *Rosson v. The State,* 92 Ala. 76. The complaint was not sufficient, nor was the evidence sufficient to show a prescriptive right.—*Lucy V. T. &*

*C. R. R. Co.,* 92 Ala. 246; *Riggs v. Fuller,* 54 Ala. 141; *L. & N. v. Phylyaw,* 88 Ala. 264. The rule is that an inchoate prescriptive right to an appurtenant easement does not pass by deed unless specifically mentioned.— 55 N. H. 423; 34 Vt. 451; 29 Ohio St. 642. The court erred in permitting the witness to be asked if the millsite did not becomes more valuable by the clearing of land about it.—*L. & N. v. Landers,* 135 Ala. 504; *Hames v. Brownlee,* 63 Ala. 277. The court erred in admitting evidence of the contract as it was not merely collateral. The court also erred in permitting evidence as to the depreciation of the property by the half filling of the millpond as well as by the entire filling.—*Wesson v. Washburn,* 90 Am. Dec. 181; *Van Dusen v. Young,* 29 N. Y. 9; See also 29 N. Y. 346; 131 N. Y. 31; *Hames v. Brownlee, supra; L. & N. v. Banks,* 132 Ala. 471. The time of the statute of limitation running was from the time of the construction of the embankment and the deposit.—*S. & N. Ry. Co. v. Buford,* 106 Ala. 303; *Snedicor v. Davis,* 17 Ala. 472. On these authorities the court erred in refusing charges 11, 12, 13, 17 and 23. The court erred in giving charge 9 at the request of the plaintiff. Punitive damages were not recoverable in this case. His easement was the subject of condemnation.— 15 Cyc. 607, and hence, the action of the railroad company should have been enjoined. The measure of damages, therefore, is the difference in value before and after the act complained of.—*H. A. & B. R. R. Co. v. Matthews,* 99 Ala. 24; *Jones v. N. O. & S. R. R. Co.,* 70 Ala. 227. In the absence of evidence showing that the act was wantonly or maliciously done or done with circumstances of aggregation, punitive damages are not recoverable.—*Garrett v. Sewell,* 108 Ala. 521; *Snedicor v. Pope,* 39 South. 318.

WILLETT & WILLETT, for appellee.—The allegation that the plaintiff had a right to maintain the pond in the condition it was then in was not a mere conclusion, but was a shorthand rendering of a fact, and as such was sufficient.—*Hood v. Diston,* 90 Ala. 377; *Shafer v. Hausman,* 139 Ala. 236; *Elliott v. Stock,* 67 Ala. 291; *Woodstock Co. v. Roberts,* 87 Ala. 436. It would be almost impossible to set out the distinct acts of ownership in connection with the backing up of the water, and it was sufficient to merely aver a right to user,— *Love v. Coker,* 140 Ala. 249; *Adler v. Sullivan,* 115 Ala. 582; *Burns v. George,* 119 Ala. 504; *Clarke v. Moses,* 50 Ala. 326. It was competent to show the depreciation of the value of the property with the millpond half filled up, as well as when entirely filled up.—*O'Grady v. Julian,* 34 Ala. 88. Counsel discuss other assignments of error relative to admissions of evidence, but without citation of authority. They insist that the contract under which the contractor is working was incidental and collateral to the issue, and could be shown by secondary evidence.—*Bulger v. Ross,* 98 Ala. 267; *Smith v. Dinkinspiel,* 91 Ala. 529. A witness who was familiar with the property can testify as to its value as to depreciation in value caused by circumstances and the loss occasioned.—*S. & N. A. R. R. Co. v. McClendon,* 63 Ala. 266; *M. & W. P. R. R. Co. v. Varner,* 19 Ala. 185; *M. J. & K. C. R. R. Co. v. Riley,* 119 Ala. 260; *Burkes v. Hubbard,* 69 Ala. 379. The question as to the two lines of roads and the going over it with the construction engineer was competent on the theory of punitive damages. —*C. of Ga. Ry. Co. v. Windham,* 126 Ala. 552. The bill of exceptions must recite the fact that exceptions were taken at the time objection was made.—*Moore v. The State,* 40 South. 345; *Reynolds v. The State,* 68 Ala. 502. Counsel discuss charges, but without citation of

authority. As to the right of a riparian proprietor to have the streams flow through his lands in' its natural channel, without obstruction or pollution, see.—38 Ala. 596; 85 Ala. 587; 100 Ala. 252; 102 Ala. 501. As to the right of action by a riparian proprietor, against an upper one for making deposits in a stream, see.—Authorities supra. The statute of limitations begins to run from the injury done and not from the time of the act ultimately causing the injury.—*Savannah Ry. Co. v. Buford,* 106 Ala. 304; *Tutwiler Coal Co. v. Nichols,* 39 South. 764.

MAYFIELD, J.—The complaint, as amended, contained six counts. The affirmative charge was given as to the fourth count, at the request of the defendant, appellant here, and we need not pass on the rulings of the lower court as to the demurrers to it. The other five counts, properly interpreted, stated a substantial cause of action in case, and were not subject to any of the grounds of demurrer assigned. A demurrer goes to the whole count, and, except in suits on bonds, assigning special breaches, is not the proper mode of raising an objection to only a part of the count.—*Pryor v. Beck,* 21 Ala. 393; *Hester v. Ballard,* 96 Ala. 410, 11 South. 427; *L. & N. R. R. Co. v. Hine,* 121 Ala. 234, 25 South. 857; *Kennon v. Telegraph Co.,* 92 Ala. 399, 9 South. 200.

The first three counts, as amended, set out with particularity the plaintiff's ownership of a mill site and mill on Ohatchie creek, situated on certain described lands, and further alleges that said mill "and pond which supplies and supplied it with water have been situated and located at the point they now are for many years, and plaintiff at the time of the injuries complained of had the right to maintain said pond in the condition it was then in. Construing this language most

strongly against the pleader, as we must, and acting on the presumption that, if the pond had been entirely located on the lands of plaintiff, he in suing for his alleged injuries would have so claimed, the presumption follows that these allegations mean and were intended to mean that plaintiff's mill and mill site were on his lands, and that the place where the embankment was constructed and where the earth, sand, mud, and rock which were put into the pond or creek near said embankment was on the lands of defendant, or some person other than plaintiff. It is true that other allegations of these counts, such as "defendant put in or caused to be put in said pond near said embankment quantities of loose dirt, rock," etc. ,would indicate that the counts were in trespass, but the allegations of such consequential damages as the washing of this loose material down to his mill so as to fill up and continue to fill up the mill race and water house of his mill are sufficient to make a complete claim for at least nominal damages.—*Capital City Water Co. v. City Council,* 92 Ala. 366, 9 South. 343. Defendant's grounds of demurrer are all seemingly based on the theory that the counts were in trespass. None of them pointed out any defects, and the court below cannot be put in error for overruling them.

Counts 5 and 6 are plainly actions on the case by a lower against an upper riparian owner or proprietor for damages resulting as a consequence of a pollution of the waters of the stream. In the case of *Tennessee Coal, Iron & R. R. Co. v. Hamilton,* 100 Ala. 252, 14 South. 167, 46 Am. St. Rep. 48, we quote at length from the numerous authorities pertaining to the rights of parties so situated, and it is the settled law of this state that an action lies for "the casting upon one's land of dirt and foul water, or substances which reach the stream by percolation; * * * the letting off of

water made noxious by precipitation of minerals, * * * or rendering the water unfit for domestic, culinary or mining purposes, or for cattle to drink of, or for fish to live in, or for manufacturing purposes."—*Tennessee, etc., Co. v. Hamilton, supra; Drake v. Lady Ensley C. I. & R. R. Co.,* 102 Ala. 501, 14 South. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77, and authorities cited. While the strict rule thus laid down is modified in all cases by a due consideration of the needs and wants of the age, and with due regard to all reasonable uses of the water flowing in the stream, and of the lands contiguous thereto, to put into the stream within 450 feet of plaintiff's property such quantities of loose earth, sand, and rock as would by natural drifting or washing fill up plaintiff's pond, mill race, and water house to such an extent as "to make it frequently impossible for plaintiff to operate his mill at all," sufficiently states a cause of action for damages.

The testimony is quite lengthy, and very numerous objections were interposed and exceptions reserved. Many, if not the most, of these rulings, were free from error, and we will refer to only a few. The objection to the question to the witness Gray: "You say the more land cleared around the banks of a creek the muddier it becomes. I will ask you if it is not also true that the more land that is cleared in and around creeks and mills the more valuable the mill site becomes"—we first held should have been sustained. On further examination we find no valid objection to this question. The answer to it might tend to show the value of the property and the extent of the damage, if any. The fact that the jury knew this as well as the witness would tend to show that no injury could result from it which is necessary to constitute reversible error. Plaintiff had a right to show the general nature and character of the

mill and its surroundings, and any and all facts show-
ing or tending to show its advantageous location and
the proximity of the railroad may have had some bear-
ing on the question of value; and it was competent to
show that "the engineers or those in charge of the build-
ing the new line came over the east and west tracks"
because tending to show that they had knowledge of the
location of this mill and of the fact that the work they
were doing would probably injure or damage it. It
might tend to show punitive damages.—*Windham's
Case*, 126 Ala. 552, 28 South. 392. It was competent to
prove the depth of the mud above as well as below the
fill, as the difference in them might tend to show that
the increased depth of the mud below the fill was occa-
sioned by dirt from it. The condition of the mill at
the time plaintiff bought the property, the amount of
repairs made by him all had a tendency to prove its
condition and value, and these matters were admissible.

The difference in the market value of the property be-
fore and after the alleged injury thereto is not the only
measure of damages. Evidence showing loss of custom,
expense of remedying the injury, increased cost of ma-
chinery to operate, and expense of operation caused by
the wrongful act were proper subjects of consideration
by the jury. The right of a lower riparian owner to re-
ceive upon his land in its natural condition the water
from above is what is termed a "natural easement," and
this natural right of property inheres in the estate en-
titled to the benefits of such rights ex jure naturæ inde-
pendently of grant or prescription. The right to over-
flow or back up water on the lands of another is of an
entirely different character. Such easements "lie in
grant," and can be acquired only by grant, express or
implied, or by prescription, which presupposes a grant
to have existed. While plaintiff's deed did not convey

to him in terms any right to overflow the lands of Gray, yet the exercise of that right by him and by those under whom he claims for more than 20 years continuously gave, by prescription, a perfect easement or right to use the land covered by the millpond—no matter whose land it was—and the plaintiff is therefore entitled to damages on account of the pond's having been cut off and the part of his reservoir taken from him.—*Stein v. Burden,* 24 Ala. 130, 60 Am. Dec. 453. Gray's sale of the right of way to the defendant did not and could not operate as a revocation of plaintiff's right to overflow the lands in his pond acquired by adverse possession or prescription. The defendant could not acquire from Gray the right to fill up plaintiff's pond in constructing its railroad, and it was its duty to avoid injuring plaintiff's property by filling up his pond, and to erect a bridge instead of a fill, if necessary to avoid such filling up of the pond and the changing of the bed of the creek to his damage. If the defendant filled up plaintiff's pond and changed the course of the stream, and that resulted in damage to the plaintiff, he, of course, could recover those damages in this action.—*Windham's Case,* 126 Ala. 560, 28 South. 392; *Hick's Case,* 133 Ala. 425, 31 South. 947, 57 L. R. A. 720, 91 Am. St. Rep. 38; *Nolan's Case,* 134 Ala. 332, 32 South. 715; *Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147; 5 Mayfield's Dig. 233; *Bruley v. Garvin,* 105 Wis. 625, 81 N. W. 1038, 48 L. R. A. 839; *Roffey v. Henderson,* 17 Q. B. 574. Under the evidence, plaintiff could recover damages for the decrease of his storage or reservoir facilities on the lands of Gray, he having acquired the right to flood

such lands by prescription. There was testimony from which the jury might infer a willful disregard of the rights of the plaintiff, and which might support a judgment for punitive damages. The court did not err in its charges to the jury instructing them that they might assess punitive damages. The court did not err in its charges in reference to the right of plaintiff to recover damages for the lessening of the storage capacity of the pond. Its charges in reference to the statute of limitations were correct.

It was error to allow the plaintiff to prove by the witness Lacy, over the objection of the defendant, "what it would cost to remove the dirt and mud out of Wood's millpond in Calhoun County, Ala." This proof should have been limited to the cost of removing that part only which was wrongfully placed therein by the defendant. The evidence in this case showed that there was other dirt and mud in this pond than that placed therein by the defendant, and, if the evidence had not shown it, surely courts and juries know that mud in great quantities accumulates in millponds which have been used for 30 years or more. The fact that it would have cost more to remove all this mud from the pond than would be the depreciated value of the property in consequence of defendant's wrong was not the test to determine the amount or proper measure of damages. It was, no doubt, not offered by counsel for this purpose, nor did the court allow it for this purpose; but it was irrelevant and immaterial and directly calculated to mislead and confuse the jury, and we cannot say that it was without injury, though the court seems to have stated the law correctly as to the measure of damages. We think it was also error to allow the witness Lacy to testify as to the terms of the contract under which he did the work for the defendant, which work occasioned the damages, the sub-

ject of this suit. The liability of the defendant might and did depend upon this contract. It was conceded that Lacy did the work for defendant. Whether he did it as an independent contractor or as a mere agent of the defendant would in a large measure determine the liability of the defendant: that is, the defendant's liability would depend upon an entirely different state of facts in the two cases (unnecessary here to discuss). Consequently it cannot be said that this contract between Lacy and the defendant was entirely collateral, so as to allow secondary proof of its contents without any attempt to demand or obtain it, or to account for its absence. It was clearly error to allow this witness to state his theory or contention as to that, as he did. His company was a party to it, and through his company was liable to plaintiff, too, if the defendant was, yet, if the defendant was made to pay it, his company would escape liability as to plaintiff, and, if his version of it was true, would not be liable to defendant, because done under and in accordance with defendant's instructions. This, of course, may have been true, but the contract was the best evidence of it, and not the parties' construction or recollection of it. The contract should have been produced, or its absence accounted for, before allowing this party to testify as to its contents and provisions. It was not collateral to the issues on trial in such sense as to dispense with the necessity for the best proof thereof.

It was likewise error to allow the witness Pearce to give his opinion as to how much it would depreciate the property to have the millpond half filled up, and how much if entirely filled up. This was a purely speculative and gratuitous guessing on the part of the witness, and could only serve to mislead and confuse the jury; and there was no evidence that the pond was half filled

[Atlanta & Birmingham Air Line Ry. v. Wood.]

up or entirely filled up by the defendant. If the witness had been shown to have knowledge of the facts or was an expert upon the subject in hand he could have estimated, or given his opinion upon, the depreciation in the value of the property on account of the filling of the pond, to the extent for which defendant was or might be liable.

For the errors above pointed out, the judgment of the lower court must be reversed and the cause remanded.

Reversed and remanded. All the Justices concur.