[Killian v. Killian, et al.]

# Killian *v.* Killian, *et al.*

*Damages for Diverting Water.*

(Decided February 8, 1912.   57 South. 825.)

1. *Waters and Water Courses; Diversion; Surface Water; Evidence.*—The evidence stated and held insufficient to sustain counts charging wrongful diversion of a stream from its natural course, causing it to flow over and across plaintiff's land, or that the flow of surface water has been changed.

2. *Same; Injury to Servient Tenement.*—The evidence examined and held insufficient to sustain a count charging injury to a spring and water, and to plaintiff's farm.

3. *Same; Pollution.*—A landholder may not place anything in either percolating water or that which is gathered in defined and known surface streams which will pollute the wells or springs of his neighbor.

4. *Same; Drainage.*—An upper landowner may drain and ditch his land provided he does so with a prudent regard for the welfare of lower owners, and that he does no more than concentrate the water and cause it to flow more rapidly and in greater volume on the inferior heritage, and it is usually a question for the jury whether the use made was reasonable.

5. *Same.*—In an action for deflecting water into a sinkhole whence it flowed by underground channels into plaintiff's spring, it was a question for the jury whether the disposition of the water by the defendant was a prudent and proper one to protect his own property, and whether it was with a proper regard to the interest of plaintiff, a lower owner.

6. *Same; Natural Channel; What Constitutes.*—The fact that water flows naturally through a channel will not make it a known and well defined channel.

7. *Same; Pollution; Acts of Dominent Owners.*—To render an upper owner liable to the lower owner for pollution of a spring by diverting waters into a sinkhole, it must be shown that the water falling into the hole passed through the spring, and that the water would not pass into the sinkhole but for the acts of such upper owner.

8. *Same; Burden of Proof.*—The burden of showing that the spring was damaged by the act or agency of the upper owner is upon the lower owner suing for such pollution.

9. *Same; Action; Parties.*—Where the defendant neither owned any interest in the land on which the sink hole was located, in which the waters were claimed to have been diverted, nor directed nor authorized the act in question, no recovery can be had against him for diverting surface water and polluting a spring.

[Killian v. Killian, et al.]

10. *Same; Instructions.*—Whether or not the defendant, an upper owner, knew that the water diverted would flow into plaintiff's spring was for the jury in determining whether the disposition of the. water was prudent and with due regard to the interest of the plaintiff, and an instruction asserting that a lack of knowledge would not relieve the defendant from liability was misleading.

11. *Same.*—Where the action was for deflection of surface water into a sink hole, causing injury to plaintiff's spring, an instruction asserting that in law a known and well-defined channel is a channel through which water naturally flows, was abstract.

12. *Damages; Pollution; Damages Recoverable.*—Damages to a spring caused by the diversion of surface water into a sinkhole are such damages as have accrued prior to the bringing of the action; damages accruing since the commencement of the action are not recoverable.

APPEAL from DeKalb Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by W. E. Killian against G. W. Killian and another. Judgment for defendants, and plaintiff appeals. Affirmed.

The facts sufficiently appear from the opinion of the court. The following is the oral charge of the court excepted to: "If Kenneth Killian, by building a rock wall or doing any other act, caused more water to flow into the hole than otherwise would have done so, and he knew, or had knowledge to lead him to believe, at the time, that the water would go into an underground channel leading to plaintiff's spring, and that it would flow into plaintiff's spring and injure it, and did so injure it, then the defendant Kenneth Killian would be liable; otherwise not."

The following charges were refused to the plaintiff: (1) "The court charges the jury that in law a known and well-defined channel is a channel through which water naturally flows." (2) "The court charges the jury that the fact, if it be a fact, that defendant Kenneth Killian did not know that the water, diverted from the natural channel and cauesd to run into the sink hole, flowed or would flow into plaintiff's spring, does

not relieve him from liability, if the water was thus diverted to an underground channel which connected with plaintiff's spring." (3) "The court charges the jury that if defendant Kenneth Killian, by constructing a stone wall or other means, diverted a stream from its natural channel, or a part of a stream, and this water flowed through an underground channel and into plaintiff's spring, and that if this caused injury and damage to the spring, then the plaintiff is entitled to a verdict for such damages as the evidence may show he is entitled to." (4) "If you are satisfied from the evidence that the defendant knowingly diverted the water from his land into a subterranean stream forming plaintiff's spring, and that said spring was thereby damaged or impaired, the defendant would be liable in such damages in such sum as you may determine the evidence warrants, not exceeding the sum claimed in the complaint."

The following charges were given for the defendants: (1) "The court charges the jury that, before they can find for the plaintiff, they must believe from the evidence that the water which flows into the sink hole passes through Killian's spring, and that the water would not have passed into the sink hole, had it not been for the work done on said sink hole by the defendants, or because of the rock wall or levee constructed by defendants." (2) "The court charges the jury that, if they believe the evidence in this case, they cannot find for the plaintiff under count 2 of the complaint." (3) "The court charges the jury that, if they believe from the evidence that at the time of the building of the wall, or the removal of the stone or other substance from the sink hole, G. W. Killian owned no interest in the lands on which they were situated, and did not direct or authorize said act, you cannot find for the plaintiff as against said G. W. Killian." (4) "The court charges

[Killian v. Killian, et al.]

the jury that the plaintiff cannot recover damages to his farm or spring which have accrued since the suit was commenced." (5) "The law holds a man liable for the consequences of his acts only, and if you should find from the evidence that the defendant's work upon the sink, and the removal of the stone and other debris, had not the effect reasonably to add to the volume of water finding its way into said sink, and to damage and injure plaintiff's spring, then you must find your verdict for the defendant." (6) Affirmative charge not to find for plaintiff under count 1. (7) "Before the plaintiff is entitled to recover damages of the defendant at your hands, he must reasonably satisfy you from the evidence that plaintiff's spring has been damaged by the act or agency of the defendant, and if, after you have considered all the evidence in the case, your mind is left in such doubt and uncertainty as to what the truth of the transaction inquired about reasonably is, then the plaintiff has failed to carry the burden the law imposes upon him, and your verdict must be for the defendant."

HOWARD & HUNT, for appellant. Charge 1 should have been given.—*Minard v. Currier,* 32 Atl. 472; *Miller v. Black Rock Springs,* 40 S. E. 27; *Ruber v. Merker,* 94 N. W. 354; 2 Words & Phrases, 1954. Counsel discuss the other charges given and refused but without further citation of authority.

BOYKIN & BAILEY, for appellee. The law governing the instant case has been well stated in *Willow Creek I. Co. v. Michaelson,* 51 L. R. A. 282. Percolating waters and those whose sources are unknown belong to the realty in which they are found.—*Bloodgood v. Ayres,* 15 N. E. 433, and cases there cited. None of the

rules relating to water courses and their diversion apply to springs or wells.—Authorities next above. Charge 1 was therefore properly refused. Charge 2 was also properly refused.—6 L. R. A. 280. Charge 3 was properly refused.—25 Pa. 528; 45 Pa. 514; 106 Pa. 634, and authorities next above. It is, therefore, clear that the determination between rights in the surface and in subterranean waters is not founded on the fact of their location above or below ground, but on the fact of knowledge actually or reasonably acquired of their existence, location and courses. The owner of the soil may expel surface water from his own land to that of another without wrong, if done prudently and with due regard to the rights of lower owners.—20 L. R. A. 42; 9 Am. Rep. 573; Gould on Waters, sec. 263.

SIMPSON, J.—This action is by the appellant against the appellees.

The first count is for wrongfully diverting "a stream of water from its natural course, causing it to flow over and across the lands of plaintiff, thereby injuring his lands and crops." The second count is for changing "the flow of surface water" on the land of defendants, "so that it overflowed plaintiff's land and spring, in an artificial channel, doing great damage to his land and crops." The third is for changing or diverting a stream from its natural channel, "so that it ran into plaintiff's spring, thereby injuring the spring and water and plaintiff's farm." The fourth count is for building "a wall that diverted a stream of water from its natural channel, and caused it to flow into an underground channel that connected with plaintiff's spring, thereby overflowing and injuring said spring"; and it is alleged that, "after defendant knew this or was in possession of facts and circumstances, which, if followed up, would

have led to such knowledge, he refused or failed to remove said wall, and put the water thus directed back into its natural channel."

The testimony on the part of the plaintiff is that the farm of plaintiff is south of, and adjoining, the farm of defendant; that there was a spring on the land of plaintiff at the foot of a mountain; that a hole or sink, a little north of east and about one-fourth of a mile from said spring, made its appearance in a field of defendant during a wet season; that rock "was bursted up in the role, brush torn out, and gravel turned loose"; that the large rocks were taken out and small rocks and gravel fell through out of sight; that "they [defendant's employees] took a right smart of stuff out of the hole"; "that there was a waterway coming down the mountain hollow, and one channel of this waterway came within 10 or 12 feet of the hole, and another one came a little closer; that about one-third of the water was going into the hole at the time he worked in it"; that a rock wall was built by defendant's employees across the channel, the effect of which was to throw about one-third more water into the hole than was already going in; that a levee was built in defendant's field, and a ditch dug leading towards the sink hole, the effect of which was to drain the field and carry the water towards the hole; that the spring "would never get muddy before the sink hole came, and that, after it came, it would get muddy every time it rained, and that the same kind or color of water would come out of the spring as went into the hole"; that, before the hole came, the spring was always clear, except that it would sometimes get a little milky after a big rain; that tests had been made by putting various articles in at the hole, and that they or similar articles would afterwards be found in the spring; that the water that went into the hole would

pour down into an underground cave or channel,. out of sight.

The testimony on the part of the defendant tended to show that the spring would, at times, get muddy before the hole came, the same as it did afterwards; that the spring had not been damaged at all; that there was a large cave near the top of the mountain known as "Killian's Cave," about a half mile from the spring, and there were mud and trash on the sides of the walls of said cave, tending to show that the water would rise and fall therein; that tests had been made by putting oil and bran in said cave, which would come out at the spring; that one night, about the time testified to by plaintiff's witness, during a heavy rain, the bottom or bed of the mountain stream fell in at a point just at the foot of the mountain, making a hole eight or ten feet wide; that defendant, Kenneth Killian, had some rock and other things that had drifted into the hole taken out; that the great bulk of the water was running into the hole, before anything was done to clean out the hole or build the dam, etc.; that, after the sink hole fell in, a small cave was found underneath it, into which the water poured, and from the cave flowed in an underground channel, which was in places 30 or 40 feet high; that defendant's witnesses .went down into said cave, and followed the stream for 200 or 300 feet in a northwestwardly direction; that the water from the sink hole went into said channel; that the point to which this channel was traced was 27 feet lower than plaintiff's spring (said spring being more than a quarter of a mile from the sink hole), and going in a direction opposite from the spring; that various tests were made by putting light articles into the sink hole, which never came out at the spring, also muddying the water at the sink hole, which had no effect on the spring; also that

about 30 or 40 feet above the spring in question there is a hole, and, if light substances are placed in this hole, they come out in the spring; also, that there are indications of coal oil in said hole; that there is a hill or spur of the mountain between the sink hole and the spring. It is admitted by the plaintiff that said spring is not his only source of water for domestic purposes. It is also shown that the stream in which the sink hole occurred is only a wet-weather stream, running only in wet seasons.

It is evident that there was no testimony to sustain the first and second counts, nor is there any evidence to sustain the allegation in the third count, that plaintiff's farm was injured. Counsel for both parties cite a number of authorities on the subject of the rights of land-holders in percolating waters, and in subterranean streams, and the liability for diverting the same so as to cut off the source of supply in adjacent lands. There are a vast number of decisions on these subjects, which we do not deem it necessary to consider, as there is no such claim in this case. While it is true that, as to percolating water (that which merely filters or oozes through the soil), the owner of the soil may use or divert the same so as to deprive the adjacent owner entirely of it, while he may not divert an underground stream flowing in a definite known channel, though he may use it just as he may use a surface stream, yet the question here is what he may do with that part of the surface water which is collected in a definite channel. The maxim of the law is, "Aqua currit, et debet currere, ut currere solebat," so that a man may not gather the surface water, or change the channels which it has made, in such a way as to throw it in a body upon his neighbor's land, to his injury (3 Farnham on Waters & Waterways, p. 2574, § 885 et seq.; page 2710, § 935 et

seq.) ; yet there is no evidence in this case to show that such a thing has been done. The claim here under the evidence is not that the water was collected or turned in such a way as to overflow and injure the adjoining lands, but only that, by turning the water into a natural hole in the ground, it found its way to the plaintiff's spring, and caused it to be muddy at times.

The question here is, Did the defendant, by the acts complained of, pollute the water in the spring of the plaintiff, and, if so, has the evidence furnished · any criteria by which the liability of the defendant can be declared and the amount of the damage estimated; for the authorities recognize the principle that whatever may be the rights of a landholder in either the percolating water, or that which is gathered in defined and known subsurface streams, he cannot place anything in either which will pollute the springs or wells of his neighbors.—3 Farnham on Waters & Water Rights, p. 2730, § 945 et seq., and cases cited in notes.

In a case in Pennsylvania, where parties boring gas wells brought up salt water from a lower stratum, which injured fresh-water wells by rising therein, the Supreme Court of that state, after citing a number of cases on the rights in subsurface waters, held that: "If the existence of a stratum of clear water, and its flow into wells and springs of the vicinity, and the existence of a separate and deeper stratum of salt water which is likely to rise and mingle with the fresh, when penetrated, in boring for oil or gas, are known, and the means of preventing the mixing are available at reasonable expense, then clearly it would be a violation of the living spirit of the law not to recognize the change, and apply the immutable principles of right to the altered conditions of fact."—*Collins v. Chartiers Valley Gas Co.,* 131 Pa. 143, 159, 18 Atl. 1012, 1014, 6 L. R. A. 280, 283, 17 Am.

St. Rep. 791, 795. In other words, that court held that it was a matter for determination whether the party boring was guilty of negligence under the facts as known.

Some cases hold that the party is not liable unless the act is done maliciously, it being damnum absque injuria; but the Supreme Court of Nebraska, after an exhaustive examination and classification of the authorities, concludes: "The most that can be said is that the defendant would not be liable for damages unless the injury was one which was the natural and probable consequence of his acts."—*Beatrice Gas. Co. v. Thomas,* 41 Neb. 662, 671, 59 N. W. 925, 928, 43 Am. St. Rep. 711, 717.

The Supreme Court of Pennsylvania holds that "damages resulting to another from the natural and lawful use of his land by the owner thereof are, in the absence of malice or negligence, damnum absque injuria, and that consequently one who mines coal on his land is not liable, though the water which percolates or flows therefrom may render the water of his neighbor totally unfit for domestic purposes."—*Penna. Coal Co. v. Sanderson,* 113 Pa. 126, 6 Atl. 453, 57 Am. Rep. 445.

An English case holds that merely making the water of a well temporarily muddy is too minute a damage to authorize a recovery.—*Taylor v. Bennett,* 7 Carrington & Payne (before Justice Coleridge), 329.

We find no cases in our own decisions directly on the facts of this case, but our court has held that the distinction between the diversion of streams and of surface water does not prevail in this state, and that if one changes the flow of surface water so as to discharge it injuriously on his neighbor's land, through a channel other than that through which it naturally flows, he is liable in an action of damages, but that the damages

recoverable are only those which have accrued up to the commencement of the suit.—4 Mayfl. Dig. 1131; *Central of Georgia Railway Co. v. Windham,* 126 Ala. 552, 28 South. 392, and cases cited; *Hughes v. Anderson,* 68 .Ala. 280, 44 Am. Rep. 147.

Our court also holds that an action lies for "the casting upon one's land of dirt and foul water, or substances which reach the stream by percolation; \* \* \* the letting off of water made noxious by the precipitation of minerals, \* \* \* or rendering the water unfit for domestic, culinary, or mining purposes, or for cattle to drink of, or for fish to swim in, or for manufacturing purposes."—*Atlanta & Birmingham Air Line Ry. v. Wood,* 160 Ala. 657, 663, 49 South. 426, 428.

As said by Stone, J., in the *Hughes-Anderson Case,* 68 Ala. 285, 286 (44 Am. Rep. 147), "this rule cannot be enforced in its strict letter," and due regard must be had to the right of the defendant to properly care for his own property. "It is not, however, to be understood that, because the flow of water must not be caused by the act of man, that, therefore, the proprietor who transmits water to the inferior heritage is not permitted to do anything on his own land—that he is condemned to abandon it to perpetual sterility, or never vary the course of cultivation, simply because such acts would produce some change in the manner of discharging the water. The law intends not this. \* \* \* It is not more agreeable to the laws of nature that water should descend than it is that lands should be farmed and mined; but in many cases they cannot be, if an increased volume of water may not be discharged through natural channels and outlets. \* \* \* Under these rules, the defendant had no right by ditches or otherwise to cause water to flow on the lands of plaintiffs, which, in the absence of such ditches, would have

flowed in a different direction. As to the water theretofore accustomed to flow on the lands of the plaintiff, defendant was not bound to remain inactive. He was permitted to so ditch his own lands as to drain them, provided he did so with a prudent regard to the welfare of his neighbor, and provided he did no more than concentrate the water, and cause it to flow more rapidly, and in greater volume on the inferior heritage. * * * It is a question for the jury to determine, on the facts of each particular case, under proper instructions from the court."

Under these authorities, we hold that in this case it was a question for the jury to decide whether the disposition of the water by the defendant was a prudent and proper disposition of the water for the protection of his own property, with a proper regard for the interests of his neighbor, in view of the improbability of said water's reaching the spring of his neighbor and injuring it.

There was no error in the refusal to give charge 1, requested by the plaintiff, because "water naturally" flowing through a channel is not necessarily "a known and well-defined channel," and for the further reason that, under the principles laid down, it is abstract.

There was no error in refusing to give charge 2, as, if not otherwise bad, it was misleading. The question as to whether the defendant knew that the water would flow into plaintiff's spring was a matter for the jury to consider in determining whether it was a prudent disposition of the water, with due regard to the interests of his neighbor.

Charges 3 and 4 took from the jury the determination of the prudence and propriety of the action of the defendant under the principles laid down.

[Hanchey v. Brunson.]

Charges 1, 2, 3, 4, 5, 6, and 7, given at the request of the defendant, are evidently correct.

There was no error in that part of the oral charge excepted to.

The judgment of the court is affirmed.

Affirmed. All the Justices concur.