**H.H. SATTERWHITE, et al., Appellants,**

v.

**WEST CENTRAL TEXAS MUNICIPAL WATER DISTRICT, Appellee.**

No. 11–86–273–CV.

Court of Appeals of Texas, Eastland.

Aug. 27, 1987.

Rehearing Denied Oct. 8, 1987.

Bryan W. Scott and Lan T. Nguyen, Scott, Nguyen & Pollan, Houston, for appellants.

Stephen H. Suttle, McMahon, Smart, Surovik, Suttle, Buhrmann & Cobb, Abilene, for appellee.

## OPINION

McCLOUD, Chief Justice.

This is a flood easement case. Plaintiffs, H.H. Satterwhite and more than 150 other real property owners, sued the West Central Texas Municipal Water District for damages sustained to their real estate improvements [consisting generally of homes, cabins, garages, piers, and boat houses] when the waters from Hubbard Creek Lake flooded their property. The trial court granted the Water District's motion for summary judgment. Plaintiffs appeal. We affirm.

The Water District owns flood easements covering the plaintiffs' lands between the elevations of 1183 feet above sea level and 1202 feet above sea level. The Water District owns in fee simple the lands below 1183 feet above sea level. Each of the flood easements grants a "perpetual easement and right to flood" land between the elevations of 1183 [the conservation level of the lake] and 1202. On October 14, 1981, because of heavy rains, the water level of the Hubbard Creek Lake rose to an elevation of 1190.2. All of the plaintiffs' properties alleged to be damaged were located within the Water District's flood easements.

The Supreme Court of Alabama in *Brown v. Alabama Power Company*, 275 Ala. 467, 156 So.2d 153 (1963), while discussing a flood easement, stated:

When, as here, one is granted by an instrument in writing based upon a sufficient consideration a right to overflow or back water upon the land of another, an easement to flood is thereby created, the holder of the easement having dominant estate; and the owner of the land possessing the servient estate. *Atlanta & B. Air Line Ry. v. Wood*, 160 Ala. 657, 49 So. 426; 93 C.J.S. Waters sec. 27.

One who purchases land subject to, or with notice of, an easement takes the estate subject to such easement. *Scheuer v. Britt*, 217 Ala. 196, 115 So. 237.

See also *Thew v. Lower Colorado River Authority*, 259 S.W.2d 939 (Tex.Civ.App.—Austin 1953, writ ref'd n.r.e.); *Clifton v. Watuppa Reservoir Co.*, 243 Mass. 198, 137 N.E. 362 (1922).

In *Lone Star Gas Co. v. Hutton*, 58 S.W.2d 19 (Tex.Comm'n App.1933, holding approved), a pipeline easement case, the court discussed the relationship between the dominant and servient estates as follows:

The conveyance to the gas company expressly provided that it should have certain rights in and upon certain lands belonging to Hutton and his wife, and the gas company had the right of ingress and egress over and upon the lands for the purpose of exercising the rights given therein. The gas company, under the terms of the conveyance, had a legal right to locate, construct, maintain, and operate such lines across the land, and it is to be presumed that the grantors assented to bear all loss and take all profits which incidentally resulted from the exercise of those rights in a proper manner. *If grantee exercised the rights conferred in the conveyance with due care and without negligence, then no damages were recoverable.* (Emphasis added)

The case of *Williams v. Thompson*, 152 Tex. 270, 256 S.W.2d 399 (1953), involved the cutting of a roadway and the loss of lateral support resulting in erosion. The Court stated, 256 S.W.2d at page 405:

The court held [in *Lone Star Gas Co. v. Hutton*, supra] that if the company exercised the rights conferred in the instrument without negligence, no damages were recoverable. We adhere to that rule.

So we hold that respondent had the right to grade, cut out and use the entire 30 feet of Hidden Road, provided that in doing so he did not negligently destroy petitioners' lateral support.

■ The Texas rule in a conventional trial, as opposed to a summary judgment, appears to be clear: the owner of the servient estate [plaintiffs] must show that the easement owner [Water District] was guilty of willfulness or negligence in the manner in which the easement was used. See *Holloway v. County of Matagorda,* 667 S.W.2d 324 (Tex.App.—Corpus Christi 1984), *affirmed,* 686 S.W.2d 100 (Tex.1985); *Texas Power & Light Co. v. Casey,* 138 S.W.2d 594 (Tex.Civ.App.—Fort Worth 1940, writ dism'd judgmt. cor.); *J.M. Huber Petroleum Co. v. Yake,* 121 S.W.2d 670 (Tex.Civ.App.—Amarillo 1938, no writ). However, in this summary judgment case, the Water District, as the moving party, must show as a matter of law that it was not negligent.

■ Plaintiffs make general allegations and statements in their brief that the Water District was guilty of "intentional torts," but they did not raise the issue of intentional torts in their written answer or response to the Water District's motion for summary judgment. Consequently, they cannot now assert this theory as error. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). The copy of a "Supplemental Answer to Motion for Summary Judgment" contained in plaintiffs' brief was untimely filed six days after the summary judgment hearing. TEX.R.CIV.P. 166–A(c).

The basis of plaintiffs' negligence claim is that the flood gates were not timely opened because the Water District was negligent in maintaining an emergency generator which they allege was inoperable. The Water District controverted this allegation with the deposition testimony of J.D. Jones, a former employee of the Water District. Jones testified that it rained approximately 11 inches between 1:30 a.m. and 6 a.m. on October 13. At approximately 6 a.m., Jones was instructed by his superior, Martin Cleveland, to open all 12 flood gates. He started opening the gates with-

in 8 to 10 minutes. The gates are opened in a series of three, and it takes 45 minutes to an hour to open three gates. After opening three gates, it is necessary to wait 15 to 30 minutes before opening the next three gates because of the build-up of pressure behind the dam. Jones testified that 10 gates were open when the lake reached 1183 [the conservation level].

Jones stated that during the rain storm, all 220 volt electric power from the transmission lines was lost. The emergency generator had a "weak" battery, but it was started by using the battery on Jones' pickup. The emergency generator started within a few minutes and ran for several days. There was no other electrical power. The emergency generator was used to open all 12 flood gates. All 12 flood gates were open by noon on October 13. The lake crested at 1190.2 on October 14.

The summary judgment proof establishes that as Jones and another Water District employee were raising the 12th gate, they had trouble with the "points" in the lift. An employee of Texas Oil Field and Electric came to the dam and repaired the equipment. At that time, the equipment was being operated by the emergency generator. There is no evidence that the emergency generator was "inoperable."

Even if Jones is an "interested witness," [which we find it unnecessary to decide],[1] his testimony is clear, positive, and direct. Furthermore, Jones' testimony [that the electricity was off and the emergency generator was used to open the flood gates] could have been readily controverted [by the employee of Texas Oil Field and Electric who came to the dam while the emergency generator was operating] and was not. TEX.R.CIV.P. 166–A(c).

■ The summary judgment proof conclusively establishes that because of the storm there was no electrical power at the dam and that all 12 flood gates were opened by use of the emergency generator.

---

1. See *Pyle v. Phillips,* 164 S.W.2d 569 (Tex.Civ.App.—Dallas 1942, no writ), which holds that a former employee is a "disinterested witness." See, however, *Carothers v. Moore,* 183 S.W.2d 987 (Tex.Civ.App.—Galveston 1944, no writ), wherein the court held that a former employee is not a "disinterested witness" where the issue in the case is whether such former employee's negligence proximately caused the damages sought.

We hold that the Water District conclusively established that the emergency generator was not "inoperable."

 The Water District confined its use of the easement to the terms and purposes of the grant. *Kothe v. Harris County Flood Control District,* 306 S.W.2d 390 (Tex.Civ.App.—Houston 1957, no writ). The Water District did not use the easement in an unauthorized manner. *Johnson v. Southwestern Public Service Company,* 688 S.W.2d 653 (Tex.App.—Amarillo 1985, no writ).

The judgment of the trial court is affirmed.

ARNOT, J., not participating.