SOUTHWESTERN TELEGRAPH AND TELEPHONE COMPANY v.
M. INGRANDO.

Decided December 13, 1901.

1.—Negligence—Telephone Company—Poles—Act of God.

A finding that the telephone pole the breaking of which caused injury to plaintiff's property was unsubstantial at the place where it broke, and that the defect was the cause of the breaking when other poles of less apparent strength were uninjured, was not a finding that the pole was unfit and insufficient under ordinary circumstances, and did not authorize a judgment for plaintiff where the breaking of the pole was caused by an unprecedented storm such as might be termed an act of God.

2.—Same—Fact Case.

See evidence held not to show that a telephone pole was insufficient under ordinary conditions.

Appeal from the County Court of Harris. Tried below before Hon. E. H. Vasmer.

*Harris & Harris,* for appellants.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover of appellant damages for injury to a building owned by appellee and alleged to have been injured through the negligence of appellant in placing and erecting near said building an insufficient and insecure telephone pole which fell and caused the injury complained of. The defendant answered by general denial, and by special plea averred that said pole was a large, sound, and safe pole, properly guyed and stayed, and was of ample size and of sufficient strength to carry the load placed upon it in any ordinary conditions of weather; and that the storm of September 8th, during which said pole was broken, was an act of God which defendant could not foresee, and that defendant was not required to construct its line so as to withstand a storm of such violence. The cause was tried in the court below without the intervention of a jury, and judgment rendered for the plaintiff for the sum of $215.

Briefly stated, the facts disclosed by the record are as follows: The pole in question was erected by appellant on the edge of the sidewalk, and ran up through the awning in front of appellee's building in the city of Houston. It was 50 feet long and 20 inches in diameter at the base, and was placed 6½ feet in the ground. At the time it was put up, about three years before the injury complained of, it was properly inspected and found to be a good, sound pole, suitable in every way for the purpose for which it was used, according to the testimony of the only witness who knew anything about the condition of the pole at the time it was put up. During the storm of September 8, 1900, the pole broke just where it passed through the awning of appellees' building and also a short distance above the awning. The top portion of the pole, after it broke in two, was held suspended by the wires which were fastened to it. The awning fell, and the end of appellee's building was either pulled out by the wires which ran over it, and were pulled down by the weight of the pole suspended to them, or was battered down by the suspended portion of the pole as it was blown to and fro by the wind. The evidence shows that appellee was damaged in the amount adjudged him by the court below. Three witnesses testified that they examined the broken pole on the morning after the storm, and that it had the dry rot. Two of these witnesses say that it was rotten near the center, but they do not state to what extent, but they say that it appeared perfectly sound on the outside. The other witness says that he saw a rotten place on one side of the pole; he did not examine to see how far the rot extended into the pole, but that it extended four or five inches toward the center. The undisputed evidence shows that the storm of September 8, 1900, at Houston was of such unprecedented violence and fury as to come within the category of occurrences denominated the act of God. Four witnesses testified that they had examined the pole after it was broken; that they saw no indication of dry rot, and the pole was in a good, sound condition. It was a white cedar pole, which was the best kind of timber to resist dry rot in this climate. and when placed by the defendant had

been examined and selected as suitable for a corner pole. The trial court in his conclusions of fact finds that the pole was rotten and unsubstantial at the places where it broke, and that the defects were the cause of the breaking of the pole when other poles of less apparent strength were uninjured, and the breaking of the pole by reason of its unfit and rotten condition was the direct and proximate cause of the injury to plaintiff's property. This is not a finding that the pole was so defective as to render it unfit and insufficient under ordinary conditions for the purpose for which it was used, and in view of the undisputed evidence as to the character of the storm in which the pole was broken, this finding of fact is insufficient to authorize a judgment in favor of the plaintiff.

In our opinion the evidence fails to show that the pole was insufficient under ordinary conditions, and had the trial court passed upon this issue he must have so found. We think it clear that the court below in rendering judgment for the plaintiff did so upon the theory that if the pole was defective to such an extent that it was too weak to withstand the storm of September 8, 1900, when other poles erected by the company did withstand the storm, and that the breaking of the pole caused the damage to plaintiff's property, he was entitled to a judgment, regardless of the character of the storm, or of whether the pole may not have been strong enough to resist the force of any ordinary storm. It is unnecessary to cite authority upon the proposition that if the pole was under ordinary conditions suitable and sufficient for the purpose for which it was used, the fact that it was not strong enough to resist a storm of such unusual and unprecedented violence as that in which it was broken would not show negligence on the part of defendant in using said pole, because the defendant was not required to foresee such an occurrence or to construct its lines with reference to same. The mere fact that it was possible for the defendant to have procured poles of sufficient strength to withstand the storm, as shown by the fact that some of the poles erected by it were not broken by the storm, did not require it to use only poles of sufficient strength to withstand a storm of this character, and its failure to do so was not negligence.

The judgment of the court below will be reversed and this cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*