SECURITY MUTUAL LIFE INSURANCE COMPANY v. JEFF D. CALVERT.

No. 1742. Decided November 20, 1907.

**1.—Insurance Policy—Delivery While Sick—Waiver.**

A stipulation in an insurance policy that it should only take effect if delivered to the insured while in good health is waived by the insurer when its agent delivers the policy after being informed that insured was sick at the time. (P. 132.)

**2.—Insurance—Warranty—Representations—Waiver.**

A stipulation avoiding a contract of insurance in case of falsity of warranted representations (as to the physicians employed and complaints for which they had treated insured) is not waived by the insurer putting the beneficiary to expense by requiring additional proofs after death, where such action was taken without knowledge by insurer of the falsity of the warranty. (Pp. 131, 132.)

**3.—Same—Knowledge of Insured.**

An affidavit, in proofs of loss furnished after death, made by the physician attending insured in her last illness, which began sixteen days after the application for insurance was made, that he had prescribed for or attended her, other than in her last illness, "only for some slight troubles of pain at menses. She had worked almost every day for the four years I had known her," did not convey notice to the insurer that he had done so prior to the time of her application for insurance, and that the fact, not being stated in her application, avoided the policy for misrepresentation; it was not inconsistent with the facts stated in the application. (Pp. 130–133.)

**4.—Insurance—Waiver—Denial of Liability.**

An insurance company which had denied liability on its policy because of false warranty, did not waive such defense by entering into negotiations concerning a compromise, though the beneficiary was put to additional trouble and expense thereby. (P. 133.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Rains County.

Calvert sued the Insurance Company and recovered judgment which was affirmed on defendant's appeal. The appellant then obtained writ of error. Two previous judgments in plaintiff's favor had been reversed on appeal. Security Mut. Life Ins. Co. v. Calvert, 75 S. W. Rep., 912; Security Mut. Life Ins. Co. v. Calvert, 39 Texas Civ. App., 382.

*Coke, Miller & Coke,* and *F. W. Jenkins,* for plaintiff in error. —A finding of waiver or estoppel against defendant, growing out of the demand for additions and corrections to the proofs of death, can not be supported under the evidence, and therefore the court erred in submitting such question to the jury. May on Insurance, secs. 497-507, especially secs. 505-6-7; Kerr on Insurance, pp. 705 et seq., especially pp. 706-707; Matthie v. Globe Fire Ins. Co., 67 N. E. Rep., 57, and especially last paragraph of opinion; Astrich v. German Am. Ins. Co., 131 Fed. Rep., 19-20; Loesch v. Union Casualty & S. Co., 75 S. W. Rep., 624, paragraph (b); Robertson v. Metropolitan Life Ins. Co., 88 N. Y., 545; Gibson Electric Co. v. Liverpool & L. & G. Ins. Co., 54 N. E. Rep., 23; Kiernan v. Dutchess County Mut. Ins. Co., 44 N. E. Rep., 699.

If the charge meant to instruct the jury that an unsuccessful effort to compromise could be considered on the question of waiver, it is erroneous, as the law favors the efforts of parties to settle their differences out of court, and an unsuccessful attempt to do so is not an admission of liability or evidence of waiver or estoppel. Fireman's Fund Ins. Co. v. McGreevy, 118 Fed. Rep., 415; Richards v. Continental Ins. Co., 21 Am. St. Rep., 611; New Orleans' Ins. Assn. v.

Matthews, 4 So. Rep., 62; Houdeck v. Merchants' & Bankers' Ins. Co., 71 N. W. Rep., 354.

*B. M. McMahan* and ~~Looney~~ *& Clark,* for defendant in error.— The evidence amply supports the issue of waiver and estoppel growing out of the demand for additional proofs of death, and the court did not err in giving the parts of the main charge complained of. Security Mut. L. Ins. Co. v. Calvert, 39 Texas Civ. App., 382; Georgia Home Ins. Co. v. Moriarty, 37 S. W. Rep., 628, and authorities there cited; Georgia Home Ins. Co. v. O'Neal, 14 Texas Civ. App., 519; Couch v. Home Protection Fire Ins. Co., 73 S. W. Rep., 1077; Home Fire Ins. Co. v. Phelps, 71 N. W. Rep., 303; Northwestern Life Ins. Co. v. Findley, 68 S. W. Rep., 695; Germania Life Ins. Co. v. Koehler, 61 Am. St. Rep., 108; Northwestern Life Ins. Co. v. Freeman, 19 Texas Civ. App., 635.

Neel's authority was not limited in the matter of collecting premiums and delivering policies and there was no contract exempting the company from being charged with knowledge of the facts he learned in the discharge of his duties. Besides the general agents informed Calvert that Neel's authority was full and complete as to all business in his territory. Northwestern Life Ins. Co. v. Findley, 68 S. W. Rep., 695; Morrison v. Insurance Co. of North America, 69 Texas, 353; Northwestern Life Ins. Co. v. Freeman, 19 Texas Civ. App., 635; German Ins. Co. v. Everett, 46 S. W. Rep., 95; Hibernia Ins. Co. v. Malevinsky, 24 S. W. Rep., 806, and authorities there cited; Aetna Life Ins. Co. v. Hanna, 81 Texas, 493; Germania Life Ins. Co. v. Koehler, 168 Ill., 293, 61 Am. St. Rep., 108; McGurk v. Metropolitan Life Ins. Co., 1 L. R. A., 563; Globe Mut. Life Ins. Co. v. Wolff, 95 U. S., 326; 1 Joyce on Ins., secs. 542-543.

MR. JUSTICE BROWN delivered the opinion of the court.

Calvert sued the Insurance Company in the District Court of Rains County upon a policy of insurance issued by the company upon the life of Sallie Z. Calvert, wife of plaintiff, for the sum of $1,000. The Company answered that the policy was issued and based upon an application therefor made by the said Sallie Z. Calvert in which it was warranted that the answers made to questions propounded to her in the application were full, complete and true. The application contained these statements made by the said Sallie Z. Calvert: "That Dr. J. T. Milner was her family physician; that it had been ten years since she had been attended by or consulted a physician, and then by Dr. O. Smith of Cumby, Texas; that her menstruation was regular, healthy and had always been so." The application contained the following stipulation: "That each and every statement and answer made by me, as aforesaid, is material to the risk, and I warrant each and every one of said statements and answers whether written by my own hands or not, to be full, complete and true, and if any statement or answer made as aforesaid is not full and complete or is untrue in any respect, then the policy of insurance issued hereon shall be null and

void." It was also stipulated that the policy should only take effect if delivered to the insured while in good health.

The plaintiff pleaded waiver of the stipulations in the answer by the following acts done by the officers and agents of the Insurance Company: That the Insurance Company, knowing that the statements relied upon for a forfeiture of the policy were untrue, demanded of the said Jeff D. Calvert additional proofs to establish his claim under the policy, which he at pecuniary expense and loss of time furnished in compliance with the said request, and that the agent and adjuster of the said company knowing the falsity of the statements upon which reliance is now made for a forfeiture, induced said Jeff D. Calvert to go to the city of Greenville for the purpose of consulting an attorney in relation to the settlement of the claim. The trial court submitted to the jury the issue as to whether Dr. Milner was the family physician of Mrs. Calvert, and whether or not her menstruation was regular when the policy was issued and had always been so. The trial court gave to the jury this instruction: "You are charged that in the application made by Mrs. Sallie Z. Calvert for the policy sued on she agreed that the policy applied for should not be in force unless actually delivered to her and accepted by her in her life time and while in good health; and she stated therein that it had been ten years since she was last treated by a physician or consulted one. You are further charged that the evidence shows (1) that she was not in good health when the policy was delivered, and (2) that she had in fact been treated by and consulted a physician within the ten years mentioned. Either of these facts rendered the policy uninforcible and you will find for defendant unless you believe from the evidence that the defendant waived each of them."

The application for the policy was made by Mrs. Calvert about the 24th day of June, 1902, and the policy was delivered by E. T. Neel to Calvert about the 10th day of August, 1902. Mrs. Calvert had fallen sick about the 15th of July and was suffering from the attack at the time the policy was delivered, of which fact Calvert informed Neel at that time.

After Mrs. Calvert's death, about the 12th day of September of that year, proofs of death were made out in accordance with the requirements of the Company upon blanks furnished by it and sent to the General Agents of the Company at Fort Worth, who sent them to the Company at its General Office in New York. After the proofs of death had been received by the Company the medical director of the Company at the home office wrote a letter to Calvert calling his attention to some defects in the proofs and asking for additional information, which letter Calvert promptly answered furnishing the desired information. The proofs of death showed that Mrs. Calvert became sick about July 15, 1902, and never recovered, dying, as stated before, September 12, 1902. Dr. Cantrell, who was one of the attending physicians upon Mrs. Calvert, made an affidavit upon the blank form furnished by the Company which contained the following question and answer: "Have you ever prescribed or attended deceased for any sickness, disease, ailment or injury other than stated above? Ans. Only for some slight troubles of pain at menses. She

had worked almost every day for the four years I had known her."
There is no evidence to show whether the medical director had
examined the proofs of death or had seen them before he wrote the
letter to Calvert for additional information.

There was sufficient evidence to justify the court in submitting to
the jury the question of whether Dr. Milner was her family physician
or not, and also the question whether she had a disease of the womb
and whether her menstruation was regular and healthy and had
always been so. We see no error in the action of the trial court in
submitting these issues to the jury and we shall no further consider
them. There was evidence before the jury upon which they could
have found that Neel, the agent of the Company, did deliver the
policy and knew before it was delivered that Mrs. Calvert was then
sick, therefore the verdict of the jury upon that question concludes
the investigation so far as this court is concerned. The remaining
question for our consideration is, did the Company waive the for-
feiture of the policy based upon the falsity of the answer that Mrs.
Calvert had not been treated or prescribed for by any physician with-
in ten years prior to the date of the application.

The Insurance Company claims that the false answer of Mrs. Cal-
vert to the effect that she had not been treated or prescribed for by
any physician within ten years prior to the date of the application,
June 24, 1902, worked a forfeiture of the policy. Counsel for Cal-
vert do not contest that proposition, but claim that the forfeiture was
waived by the Company, and, as a basis for such waiver, assert that
after being informed of the untruthfulness of the statement of Mrs.
Calvert the Insurance Company treated the policy as in force and
called upon Calvert, the beneficiary, for additional information con-
cerning the sickness and death of his wife. This position is based
upon the statement of Dr. Cantrell which is embraced in the proofs
of death of Mrs. Calvert. The blank form which the Company
furnished for the affidavit of the attending physician embraced this
question: "Have you ever prescribed or attended deceased for any
sickness, disease, ailment or injury other than stated above?" to
which the doctor answered: "Only for some slight troubles of pain
at menses. She had worked almost every day for the four years
I had known her." Mrs. Calvert in her application had stated that
Dr. Milner was her family physician and this is the first time that
Dr. Cantrell appears to have had any employment by Mrs. Calvert.
No date is given at which he prescribed for the slight pain, etc., and
twenty days had elapsed from the date of the application to the date
of her last illness. In order to judge of the effect of this language
upon the medical examiner, or any agent of the company, we must
put ourselves as nearly as we can in the place of such officer, or
agent, and look at the facts as they then appeared to him. We find
the positive affirmation of Mrs. Calvert that she had not been
treated or prescribed for by any physician within ten years prior to
the date of the application and the statement by Dr. Cantrell that he
had treated her for slight pain at the time of menses, also that her
fatal sickness began the 15th day of July and he continued to treat
her until her death. Now the natural inference to be drawn from

these statements is that Dr. Cantrell was called in after the date of the application and gave some treatment or prescribed some remedy for her prior to the fatal attack when he was called again, and from that time became her attending physician. There is no inconsistency between the statement of Dr. Cantrell and that of Mrs. Calvert, for there was ample time between the date of the application and the 15th day of July, in which the treatment by Dr. Cantrell might have occurred. There was nothing in the proof of death nor in any part of the record of the case as it was then in the hands of the Company, so far as we have seen, that would suggest to the mind of anyone a suspicion that Mrs. Calvert had not spoken truthfully in her application and the Company can not be charged with notice of the existence of a fact not disclosed by the doctor's statement. It is suggested that Dr. Cantrell's affidavit showed that he had known her for four years, which fact pointed to a date anterior to the application. The fair construction would be that Mrs. Calvert intended to state the matter correctly and if Dr. Cantrell had treated her within four years she would have recalled it and would have stated the fact. There was no evidence upon which to submit the issue of waiver of this ground of forfeiture and the court erred in not instructing the jury to return a verdict for the defendant upon that issue.

It is also claimed that the adjuster of the Insurance Company, after full knowledge by him of the fact that the statement of Mrs. Calvert was not correct, caused Calvert to go to Greenville in Hunt County for the purpose of consulting an attorney with a view to the adjustment of this claim. At the time that this occurred the Company was denying all liability upon the policy, but, to avoid litigation, had proposed to pay to Calvert a small percent of the amount and in the course of this negotiation the adjuster suggested that they should meet in Greenville to consult with an attorney upon the matter. There was in this no admission of the validity of the contract, the parties were simply attempting to settle a disputed right which can not be regarded as an acknowledgment of the contract under which Calvert claimed.

It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that judgment be rendered for the Security Mutual Life Insurance Company.

*Reversed and rendered.*