PECOS & N. T. RY. CO. v. AMARILLO ST. RY. CO. et al.   (No. 643.)

(Court of Civil Appeals of Texas. · Amarillo. Dec. 19, 1914.)

1. ACTION (§ 27*)—NATURE AND FORM—CONTRACT OR "TORT"—"ACTION EX DELICTO."

In the strict legal sense, a "tort" is a wrong done independent of contract, but there are wrongs committed in the nonobservance of contract duties; so that, if a transaction has its origin in a contract placing the parties in such relation that the wrong is committed in performing or attempting to perform the contract, the breach of the contract is not the gravamen of the action, but is a mere inducement, and it is the wrong outside the contract which is the gravamen of the action, and such action is an "action ex delicto," or at common law an action for which case would lie.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–195; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, First and Second Series, Action Ex Delicto; Tort.]

2. PLEADING ( 58*)—INDUCEMENT—CONTRACT.

In an action ex delicto, outside the contract which induced the occasion for the wrong, the contract is a mere inducement and should be so pleaded.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 123; Dec. Dig. § 58.*]

3. ACTION (§ 27*)—NATURE AND FORM—"ACTION EX DELICTO"—"ACTION EX CONTRACTU."

A cause of action arising from breach of a promise is an "action ex contractu," and when a duty, for the breach of which an action is brought, would not be implied by law by reason of the relation of the parties and depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract and not in tort; but a cause of action arising from a breach of duty growing out of the contract is in form an "action ex delicto."

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–195; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, Action Ex Contractu.]

4. ACTION (§ 32*)—NATURE AND FORM—CONTRACT FOR TORT.

Under the system of pleading in Texas, distinctions between actions do not exist, but the facts alleged determine the character of the action, and the courts determine therefrom whether it is one of tort or contract.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 257–261, 316; Dec. Dig. § 32.*]

5. ACTION (§ 27*)—NATURE AND FORM—CONTRACT FOR TORT.

A petition, alleging that defendant street railroad did not perform the obligation of its written contract to keep its roadway under plaintiff's bridge free from inflammable material, but permitted such material to accumulate and remain in the subway, where it became ignited from some unknown cause and the fire destroyed plaintiff's bridge to its damage, and that the destruction was not due to any failure of duty on the part of plaintiff, but was the proximate result of defendant's failure to keep the subway free from inflammable material, stated an action for breach of contract; and defendant was not relieved from its contract to indemnify against damages, simply because it was not shown to be negligent in permitting such accumulation of material.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–195; Dec. Dig. § 27.*]

6. TRIAL (§ 251*)—INSTRUCTIONS—APPLICATION TO ISSUES—NEGLIGENCE—CONTRACT.

In an action for breach of defendant street railroad's contract that in consideration of the use of a subway under plaintiff's railroad it would keep the subway free from combustible material and indemnify the railroad for damages from fire, instructions making the street railroad's liability turn upon the question of negligence in not keeping the subway clear of such material were erroneous, and the plaintiff's requested charge that the liability rested upon breach of contract, and if the destruction of the bridge was caused by fire originating in such material it was liable, should have been given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

7. EVIDENCE (§ 220*)—ADMISSION—ACQUIESCENCE OR SILENCE.

Where the superintendent of a railroad met representatives of a street railroad to discuss the widening of a subway under the railroad, and no mention was made of the street railroad's contract liability for the burning of a bridge over the subway, the statement of the railroad superintendent that he supposed the bridge had been set on fire by tramps, without then stating that the railroad held the street railroad liable, under its contract, for the destruction of the bridge, was not an admission that the street railroad was not liable thereunder, since the situation of the parties and the nature of the discussion did not call upon the superintendent to assert the liability.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 771–785; Dec. Dig. § 220.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

8. EVIDENCE (§ 242*)—DECLARATIONS AND DISCLAIMER—AGENT.

To render an agent's disclaimer admissible against his principal, it must have been made concerning an act within his authority and when the act was being performed by him, and, if made before or after such act, was not admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 893–907; Dec. Dig. § 242.*]

9. CONTRACTS (§ 349*)—ACTION FOR BREACH—EVIDENCE—PRESENTATION OF CLAIM.

In an action by a railroad company against a street railroad company for the breach of its contract to keep its subway free from inflammable substances, and to indemnify the plaintiff for any loss by fire, a letter written by the plaintiff, inclosing a bill for damages for the destruction of its bridge by fire, was inadmissible to prove the time of presentation of its claim, in the absence of any evidence showing the date when the letter was mailed or sent out by the plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1096, 1781–1784, 1788–1798, 1809, 1811–1814, 1817, 1818; Dec. Dig. § 349.*]

10. APPEAL AND ERROR (§ 759*) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment presenting in one group some 13 assignments to the court's action in overruling that many special exceptions, with a statement referring to the record for the exceptions, was improperly briefed and would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. § 759.*]

11. EVIDENCE (§ 441*)—PAROL—VARYING CONTRACT.

In an action for breach of a contract to keep a subway under plaintiff's railroad free from inflammable material and to indemnify plaintiff for damages from fire, where the answer did not allege fraud, mistake, etc., in inducing the contract, parol testimony of prior negotiations wherein it sought to vary the terms of the contract were inadmissible under the pleadings.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by the Pecos & Northern Texas Railway Company against the Amarillo Street Railway Company and others. Judgment for defendants, and plaintiff appeals. Reversed.

Terry, Cavin & Mills, of Galveston, and Madden, Trulove & Kimbrough, of Amarillo (F. M. Ryburn, of Amarillo, of counsel), for appellant. Crudgington & Works, of Amarillo, for appellees.

HUFF, C. J. This suit was instituted by the appellant, the Pecos & Northern Texas Railway Company, against the Amarillo Street Railway Company, appellee. The statement of the cause of action by appellant, and acquiesced in by appellee, is as follows:

"This suit was instituted in the district court of Potter county, Tex., by appellant, against appellee the Amarillo Street Railway Company, to recover the value of a bridge erected for the support of its track over a subway to be used by the appellee, and that the street railway company crosses the track of appellant at Twenty-Fifth street, in the city of Amarillo, Tex.; appellant alleging that said subway was constructed and such bridge built at its own expense under a written contract entered into between it and the appellee on the 12th day of August, 1908. Said contract containing the terms and conditions under which said subway was constructed, among which was a provision that the street railway company should drain and keep passable and free from all rubbish and inflammable material such subway or underground crossing, and should indemnify and save harmless and free from loss the appellant from any damage on account of the destruction of such subway or bridge or any part thereof, which might be directly or indirectly caused or originate from inflammable material which should be allowed to accumulate in said subway by appellee, whether said fire should be set by trains of the appellant or by the electric wires or cars of appellee or by the public. It is further alleged in such petition that in violation of such contract appellees permitted trash, weeds, paper, and other inflammable material to accumulate in said subway, and that such trash and inflammable material so accumulated in such subway were ignited from some cause and fire thereby transmitted to the timber supporting and composing said bridge, and said bridge was as a result thereof, on or about the 19th day of April, 1910, completely destroyed by fire, to appellant's damage in the sum of $10,000."

It will be unnecessary at this time to set out the answer of the appellee.

The first assignment of error is to the effect that the verdict of the jury is contrary to the law and evidence, in that the evidence conclusively shows that the defendant permitted the accumulation of trash, rubbish, etc., in the subway, and that they caught fire, which was communicated to the bridge and caused its destruction.

Without discussing the evidence or setting it out, we overrule this objection, holding that the testimony is not conclusive that the fire originated in the rubbish, etc., and the fire was thereby communicated to the bridge. For that reason the assignment will be overruled; and, in this connection, we overrule appellee's contention that the evidence is conclusive that the fire did not so originate as would render it liable, and that any error the court might have committed would be harmless for the reason that the jury could not have lawfully rendered any other verdict than they did. The evidence we do not regard as conclusive as against either the appellant or the appellee; but there are facts and circumstances for and against both, from which an inference might be drawn by the jury, either supporting the one or defeating the other. Contention on the part of both appellant and appellee in this particular will be overruled.

The second, third, and fourth assignments of error relate to the charge of the court given in this case, and the sixth assignment, to the refusal of the court to give the appellant's specially requested charge. The court,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

in the third paragraph of its charge, instructed the jury as follows:

"By 'ordinary care,' as used in this charge, is meant the exercise of that degree of care under given circumstances which a person of ordinary prudence would exercise under the same circumstances, and a failure to exercise such ordinary care is 'negligence' in the sense that the term negligence is used in this charge. 'Negligence,' in other words, is the doing of that which an ordinarily prudent person would not do, or the failure to do that which a person of ordinary prudence would do under the same circumstances."

The fifth paragraph is:

"Under the terms of the written contracts of March 26, 1908, and of August 12, 1908, between plaintiff and the defendant street railway company, read in evidence before you, it was the duty of the said street railway company to exercise ordinary care to keep the entire subway or underground crossing under plaintiff's bridge free from all rubbish and inflammable material which could or might cause fire to originate and damage or destroy said bridge."

In the sixth paragraph the court instructed the jury to bear in mind the foregoing instructions, and if they should find from the evidence the defendants "negligently allowed rubbish and inflammable material," etc., to accumulate, and that the bridge caught fire from any cause which was communicated to the bridge from such burning material, and destroyed, etc.

The appellant requested the court, in specially requested charge No. 1, to charge the jury that under the contract sued on the liability of the parties would be governed thereby with reference to the causeway, and instructed them what the provisions of the contract were with reference to fire, and concluded:

"Therefore, if you believe from the evidence before you that the defendant street railway failed to keep said entire subway free from all rubbish and inflammable matter as provided in said contract, and that said bridge or any part thereof was destroyed by fire directly or indirectly originating from such inflammable matter, if any, which may have been allowed to accumulate in said subway by the defendant Amarillo Street Railway Company, then you will find in favor of the plaintiff, whether said fire may have been set in such inflammable material, if any, by the train of the plaintiff company, or by the public."

This charge the court refused.

Section 2 of article 1 of the contract, is as follows:

"The Amarillo Company (appellee) shall construct its railroad on the P. & N. T. Company's right of way into and through the subway or undergrade crossing, as herein provided, at its own cost and expense, and shall at all times during its right to use said subway or undergrade crossing, at its own cost and expense properly drain and keep passable and free from all rubbish and inflammable matter the entire subway."

Section 6 of article 2 is that:

"The Amarillo Company shall indemnify and save harmless and free from all loss the Pecos & Northern Texas Company against the damage or destruction of said subway or any part thereof by fire, which may be directly or indirectly caused by or originated from inflammable material which may be allowed to accumulate in said subway by the Amarillo Company, whether said fire may be set by the trains of the Pecos & Northern Texas Company or the electric wires of said Amarillo Company, or by the public."

As the appellee contends in this case that the action brought by appellant is one sounding in tort or for negligence, we quote the following paragraph from the petition:

"(7) Plaintiff further says that defendant did not and has not performed the duties and obligations made incumbent upon it by the terms of said written contract, but, on the contrary, permitted trash, weeds, paper, chips, and various other inflammable and combustible material to accumulate and remain within and about the subway or underground crossing, and that on or about the 19th day of April, A. D. 1910, such inflammable and combustible material so permitted to collect and remain within and about said subway by the defendant was ignited from some cause unknown to the plaintiff, and fire was thereby transmitted to the timbers supporting and crossing said bridge, thereby burning the whole and destroying said bridge and injuring plaintiff's railway to plaintiff's damage in the sum of $10,000.

"(8) That the burning and destruction of said bridge was in no wise owing to the failure of duty of plaintiff in any respect nor to any acts of negligence on its part, but was the proximate result of defendant's failure to keep said subway or underground crossing free from inflammable matter and combustible substance."

[1, 2] In testing the charge of the court given in this case, it will be necessary to inquire into the nature of the action brought; that is, whether it is ex contractu or ex delicto, and whether a breach of a contract or a suit in tort. It could not in the strict legal sense be a suit in tort; that is, "a wrong done independent of contract." But there are wrongs which will maintain an action on the case, known to the common-law pleading, committed in the nonobservance of duties which are but the implication of contract obligation. Wherever there is carelessness, want of reasonable skill, or the violation or disregard of duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action in tort lies in favor of the party injured. If the transaction had its origin in a contract which places the parties in such relation as that in performing or attempting to perform the service promised the wrong is committed, then the breach of the contract is not the gravamen of the action. There may be no technical breach of the letter of the contract; the contract in such case is a mere inducement and should be so pleaded. It induces, causes, creates the conditions or state of things which furnishes the occasion for the wrong. It is the wrong outside the letter of the contract which is there the gravamen of the suit. Such an action, as we understand, would be ex delicto or at the common law, an action for which case would lie. A familiar example is given by the Alabama court:

"The contract of a carpenter to repair a house, partly decayed, or otherwise defective, the implications of the contract are, that he will bring to the service reasonable skill, good faith, and diligence. If he failed to do the

work, or leave it incomplete, the remedy, and the only remedy against him, is ex contractu. Suppose, in the attempted performance, he, by his want of skill or care, destroys, or damages, or needlessly wastes the materials furnished by the hirer; or, suppose that in making the needed repairs he did it so unskillfully or carelessly as to damage other portions of the house. This is tort, for which the contract only furnished the occasion." Mobile Life Ins. Co. v. Randall, 74 Ala. 170.

[3] "Perhaps the best criterion is this: If the cause of action, stated in the declaration, arises from a breach of promise, the action is ex contractu; but if the cause of action arises from a breach of duty, growing out of the contract, it is in form, ex delicto and case." Wilkinson v. Mosely, 18 Ala. 288; Myers v. Gilbert, 18 Ala. 467.

"Where the duty for the breach of which the action is brought would not be implied by law by reason of the relations of the parties, whether such relations arose out of a contract or not, and its existence depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract, and not in tort." Ruling Case Law, vol. 1, p. 322, § 7; Russell v. Polk County Abstract Co., 87 Iowa, 233, 54 N. W. 212, 43 Am. St. Rep. 381; Railway Co. v. Becker, 67 Ark. 1, 53 S. W. 406, 46 L. R. A. 814, 77 Am. St. Rep. 78; Tuttle v. Gilbert, 145 Mass. 169, 13 N. E. 465; Flynn v. Hatton, 43 How. Prac. (N. Y.) 333.

[4] While under our system of pleading distinctions between actions do not exist, the facts alleged control and determine the character of the action, and the courts determine therefrom whether the action is one of tort or contract, and if a contract appears to be the gravamen of the suit it will be so determined. This question frequently occurs in suits against common carriers as such. See Elder v. Railway Co., 105 Tex. 628, 154 S. W. 975, for allegations in a suit for breach of the contract of carriage, in which it was determined that the suit was not for the failure to perform its legal duty, as a common carrier, but was held to be upon the contract of carriage, and was therefore a suit ex contractu, and not ex delicto, and the four years' statutes of limitations applied in that case. In the case of Stuart v. Western Union Tel. Co., 66 Tex. 580, 18 S. W. 351, 59 Am. St. Rep. 623, the sum paid to send a message is held to be recoverable on the contract, but mental distress occasioned by the negligence of the agent is recoverable from the wrong done. It is there said:

"If the facts stated show a breach of contract, and also that the breach is of such character as to authorize a suit as for a tort, all the damages recoverable for the thing done or committed, either in an action ex delicto or ex contractu, may be recovered in the one suit."

"The reform procedure has abolished forms of action ex contractu and ex delicto, but the principles of law governing these actions remain unchanged, and while an action of tort may be allowed to stand as an action for breach of a contract, when the complaint states facts sufficient to constitute a cause of action for such breach, the other allegations of the complaint may be treated as surplusage. The two causes of action are still entirely distinct, and there can be no recovery for a breach of contract when the complaint shows a cause of action in tort." Ruling Case Law, vol. 1, p. 332, § 15.

And we take it if the petition shows the cause of action on contract a recovery cannot be had in tort. The pleader "must now state his facts; he must state them truly; and he must prove them as alleged to succeed." It has been said, in action on torts founded upon express or implied contracts, the act complained of must have resulted from misfeasance or malfeasance, and that tort cannot be based upon nonfeasance alone. As illustrating, when a case may be based on tort arising out of a contract, we refer to the decision by the Massachusetts court: The city agreed to furnish water to a greenhouse, which the latter heated to keep his plants from freezing, but during sewer construction the supply pipe was negligently uncovered and the water froze, and thereby the water supply was cut off. It was held that an action for tort would lie, even though a suit on the contract would be proper. Stock v. Boston, 149 Mass. 356, 21 N. E. 871, 14 Am. St. Rep. 430; The Indiana court, in the case of Flint v. Beckett, 167 Ind. 491, 79 N. E. 503, 12 L. R. A. (N. S.) 924, held where a party undertook to erect a windmill on another building, comes into such relation to the owner as will render him liable in tort in case the work is done so negligently that the windmill falls and injures the other building.

It will be observed from an examination of the facts in these cases that there was no contract to pay the damages in case of uncovering the water pipe in the first instance; or in the second in case the windmill fell and damaged the building. The above cases cited we do not believe would fall under the rule heretofore quoted by us from Ruling Case Law, § 7, p. 332. As we understand the decisions in our own state, they are in accord with the authorities above set out. We quote from the headnote which appears to be a fair representation of the opinion of the cause of Galveston, H. & S. A. Ry. Co. v. Hennigan, 33 Tex. Civ. App. 314, 76 S. W. 452:

"(1) Where an employer fails to furnish an employé medical attendance, as he has agreed to do, the employé's cause of action is for breach of contract, and not in tort for negligence. (2) The cause of action being breach of contract, and the pleadings and trial being in form for negligence, such error, though unassigned, requires reversal."

In the case of Gunter v. Robinson, 112 S. W. 134, the controversy was over a contract to cultivate certain land. The party agreeing to so cultivate sought to excuse himself for not having done so on the grounds that the land was deep "hog wallowy" black land, and that it rained so that the hog wallows kept full of water and he could not for that reason cultivate it. The court said the character of the land was evidently known to the party when he entered into the contract, "and no provision seems to have been made to relieve him of the performance" on

account "of excessive rains. * * * When a party voluntarily undertakes, and by contract binds himself, to do an act or thing without qualification, and the performance thereof becomes impossible by some contingency which should have been anticipated and provided against in the contract, and such provision is not made, the nonperformance will not be excused." The court and judge rendering the above opinion also rendered the opinion in the case of Houston Ice Co., etc., v. Keenan, 99 Tex. 79, 88 S. W. 197. That case was a suit for the rent on a lease contract of a house for saloon purposes. The lessee sought to avoid the contract on the ground that after its execution local option had gone into effect. It was held that the subsequent adoption of local option did not absolve the lessee, and the court applied the maxim, "As a party binds himself, so shall he be bound." This holding was not only approved by the Supreme Court, but that court adopted the opinion and directed its publication. The same proposition is involved in the case of Bastrop, etc., v. Cochran, 138 S. W. 1188, where it is held the destruction of work by flood before its delivery by the builder to the owner does not excuse nonperformance of the contract. To the same effect are the following cases of Bartlett v. Bisbey, 27 Tex. Civ. App. 405, 66 S. W. 70; Burke v. Purifoy, 21 Tex. Civ. App. 202, 50 S. W. 1089–1091.

[5] If the parties who so contract cannot be released from their obligations to perform the contract on account of agencies over which they have no control, we think one who contracts that if he is given an easement over another's property he will see to it that no trash and combustible material shall accumulate and will keep the premises free therefrom, so that if fire is caused thereby or communicated to the property he will indemnify against the damages, ought not to be relieved from his contract simply because negligence is not shown against him in permitting such accumulation. It was expressly held that a charge to a jury would be improper which was to the effect that the defendant was only required to use ordinary care to perform the contract. This was a suit brought upon a breach of a contract to thresh rice. Kerr v. Blair, 105 S. W. 584.

It is urged by the appellee in this case that the petition of appellant alleges negligence, and therefore the charge of the court was proper.

In the case of Russell v. Polk County Abstract Co., supra, the court says:

"The duties arising upon contracts are, of course, legal duties, within the most comprehensive meaning of the term; but the sanction of the law making them so is invoked by the contract, and hence, in an important and practical sense, we regard and express the obligations and duties thus arising between parties as contractual, and in that way distinguish them from other legal duties or obligations. * * * In the case at bar the defendant, independent of the contract, owed no duty to the plaintiff. The neglected duty was one alone enjoined by contract. The failure to perform by the defendant was a failure to discharge its agreement, which is solely a breach of contract. No refinement of reasoning can, or should, avoid the conclusion. The fact that the act is alleged as negligently done does not change the situation. It is an allegation only as to the manner of making the breach. The liability of the defendant company in no way depends on the fact of negligence. The allegations of the petition show an absolute undertaking 'to furnish a full, complete and correct abstract to the plaintiff, correctly showing the liens of mortgages, judgments and otherwise.' The demurrer admits such an undertaking, and the allegation of neglience cannot have the effect to change the action from one on contract to one for tort. If A. should engage to deliver to B. a quantity of wheat at a certain time and place, and he failed to do so, he would be liable upon his undertaking, and, in an action for damages because of the failure, a mere allegation that he negligently failed to perform would not affect the character of the action. The liability in either case attaches without the negligence."

[6] In this case we interpret the pleading of the plaintiff to be one upon a suit for the breach of the contract, and in permitting the combustible material to accumulate from which fire was communicated to the bridge, and upon the agreement of the appellee to indemnify appellant against loss or damage so occasioned, the question of negligence is not involved in the consideration of this case. The court, by his charge, made the liability of the appellees to turn upon the question of the appellees' negligence to keep clear and prevent the accumulation of the rubbish. In this we think the court was in error. The jury may have found as a fact that the rubbish accumulated and that the fire was communicated to the bridge therefrom, yet have found that the appellee was not negligent in so permitting the trash to accumulate. We are inclined to believe that the special charge requested by the appellant was a proper charge in this case. The assignments of appellant as to the charge of the court and the refusal to give this specially requested charge will be sustained.

[7] The eighth assignment complains at the action of the court in permitting J. W. Crudgington to testify:

"He (Starkweather) told us there about the burn, and they supposed tramps had set the subway afire. At any rate, he made no intimation of any character whatever that we were in any way responsible for the fire. He said he had been to the fire. He made no claim against our company at all in that connection."

As we gather from the bill, the objections to the introduction of this testimony were that it is immaterial, irrelevant, and hearsay testimony, and the fact that his failure to say anything is not binding on the company (appellant), and there are no pleadings to support it. This is the statement made in the brief. From the statement so made, we cannot determine whether the court was in error or not; but, as the case will be reversed, perhaps we should give our views on the question. Upon reading the bill as

taken, we understand the court did not admit the statement "that he supposed tramps had set the subway on fire"; and one of the counsel for appellee stated, "We do not offer his supposition." The witness' supposition was not admissible, but this was not offered or admitted by the court, as we gather from the bill. The record in this case shows that Starkweather was superintendent of the appellant company, presumably with the right to look after the subway and bridge. It appears that Crudgington and witness Nobles, acting for appellee, went to the general offices of appellant to talk over, as we gather from the testimony, widening the subway, for the reason that there was some complaint by the public that the roadway for a public road, which also passed under the subway, was too narrow. The two contracts evidence the fact that the public road was to be so changed as to pass through the subway instead of over the railroad of appellant. While discussing the project of widening the roadway under the viaduct, the conversation objected to was had. Under the contract, the question of appellees' liability or nonliability from the fire does not appear to have been mentioned between the parties in that conversation. The suggestion made was a theory as to how the fire originated, supposedly by tramps, which, as we gather from the record, was not admitted by the court or really offered by appellee. The evidence that no mention was made of appellees' liability was then mentioned, is the only question to be determined. Starkweather in failing to then state that appellant held appellee on the terms of the contract for the burning of the bridge, we do not think can be taken as an admission that appellee was not liable thereunder. This was not the matter under discussion. The purpose of the conference was to discuss the question of widening the public roadway. Life Insurance Co. v. Calvert, 101 Tex. 128, 105 S. W. 320. Unless a party is called upon to speak by the conversation or by the circumstances then surrounding him, his silence is not an admission. 16 Cyc. 956(7).

"There is no ground for presuming acquiescence in such statements unless they are of such character as would naturally call for a response and unless the party sought to be charged was in such situation that he would probably have replied to them." Jones on Evidence, § 289.

[8] The situation of the parties on this occasion did not call upon Starkweather to assert liability on the part of appellee under the contract. The evidence was immaterial and irrelevant and in its nature hearsay. Even though Starkweather was the superintendent of the road, it does not follow that he had the right to make the claim or to assert liability. It is not shown that it was his duty as the agent of the road to call for or demand payment or in any way to adjust the claim. The fact that he may have had the right to widen the causeway does not imply authority to adjust claims for damages sustained thereto.

"To render the disclaimer of an agent admissible against the principal, such disclaimer must have been made concerning an act within the scope of authority of the agent and at the time the act was being performed by the agent. If the declaration be made before or after the act was done, it is no part of the res gestæ, and therefore not admissible." Waggoner v. Snody, 98 Tex. 512, 85 S. W. 1134; Railway Co. v. Robinson, 73 Tex. 277, 11 S. W. 327; Railway Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299; Railway Co. v. Culver, 168 S. W. 514, 517.

[9] The ninth assignment complains of the action of the court in not permitting appellant to read in evidence a certain letter dated June 7, 1910, with an attached bill for $10,037.91, dated May 27, 1910, for damages in the destruction of the bridge. Appellee objected to the introduction of this testimony because immaterial and irrelevant. Testimony was offered by the appellee that there was no claim presented to it until some time during the following summer. H. A. Nobles, an officer of appellee, testified he received the letter and claim inclosed therein January 7, 1911, after the fire. There appears to be no testimony when this letter and bill were mailed or sent out by appellant to appellee. It was not admissible, of course, as proof of the claim, and was only admissible in contradiction of the witnesses of appellee. We think no error is shown, as there is nothing showing that the claim was made prior to its reception from the post office by Nobles. To have shown it admissible for the purpose of contradicting the witnesses, we think it should further be shown that the bill was presented at an earlier date. At any rate, there is no error in the ruling of the court in this particular.

[10] The tenth assignment is improperly briefed. There are some 13 assignments presented in one group, all to the action of the court in overruling that many special exceptions. In the statement we are referred to the record to find out what the exceptions were to the answer of the appellees.

[11] The eleventh assignment presents error upon the action of the court in permitting J. W. Crudgington and H. A. Nobles to testify to the parol negotiations had between appellant and appellee before the written contract sued on in this case was executed. We will state inasmuch as the case will be reversed that the answer of appellee does not allege fraud, mistake, or the like inducing the appellees to sign and make the contract set up, and for that reason the pleading is bad. The parol testimony of the prior negotiations was inadmissible wherein it sought to vary the terms of the contract and should have been excluded. The trial court, however, ignored this testimony in submitting the case to the jury. We think, nevertheless, it was error in admitting it in the state of the pleadings in this case. We do not decide whether the preliminary written contract dated March

26, 1908, was admissible. The briefs are not in such condition as to present the question so we can fully determine whether this part of the plea was excepted to or whether the introduction of the preliminary contract was properly objected to. If we gather correctly, there is no serious objection urged to the admission of this contract. At this time we see no reason why it was not admissible, but do not wish to make a ruling thereon in the absence of specific objections being urged to its admission. What we have said above will dispose of the twelfth assignment.

The judgment of the trial court will be reversed.